80 N.J. Super. 51 (1963)
192 A.2d 850
CHARLES J. TERRELL, CECIL J. WYMAN, EDWIN R. SELESKE, STANLEY E. MORRISSEY AND FRANK J. MORRISSEY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
v.
HUMBLE OIL & REFINING COMPANY, A DELAWARE CORPORATION, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 17, 1963.
Decided July 3, 1963.
*52 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Charles Thatcher argued the cause for the plaintiffs (Messrs. Thatcher and Thatcher, attorneys).
Mr. William L. Dill, Jr. argued the cause for the defendants (Messrs. Stryker, Tams & Dill, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
The trial court granted defendants' motion to dismiss plaintiffs' complaint "on the ground that the claims stated in the complaint cannot be maintained as a class action within R.R. 4:36-1." Plaintiffs were given leave to file an amended complaint "asserting a claim by each plaintiff on his own behalf," but they declined to do so and, instead, appeal.
Defendants filed an affidavit in support of their motion to dismiss, setting forth facts which do not appear in the complaint, and plaintiffs filed an answering affidavit by plaintiff Terrell which did the same. It appears to us that to determine whether this is a case for a class action we should first examine the complaint. If the complaint itself does not exhibit a class action, the judgment should be affirmed, unless the affidavits disclose facts which added to the complaint would make it a class action, in which event, in the interest of justice, we may order an appropriate amendment.
We find that the complaint itself does not set forth a class action, but five separate tort actions. Indeed, plaintiffs contend that their claims fall within § 552 of the Restatement of Torts. That section provides that one who negligently *53 supplies information for the guidance of another is liable in damages to him if he suffers harm "because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct * * *."
The complaint is in five counts, each count setting forth the claim of a separate plaintiff. However, except for names, dates and amounts, the counts are almost identical and therefore we shall use the first count as an example.
It alleges that plaintiff Charles J. Terrell was employed by one or more of the defendants until October 1, 1959, "at which time plaintiff retired as an employee of defendant * * * Butterworth"; that "subsequent to the year 1957" Butterworth, in an effort to reduce its personnel, "entered into a program of inducing early retirement" by employees under 65; that Butterworth, as an inducement to plaintiff to retire before the age of 65, informed him that he would receive "a special allowance referred to as a Temporary Early Retirement Allowance (hereinafter referred to as TERA) * * * monthly in the amount of $37.61 * * * until the same `stops at age 65 if eligible to Social Security Benefits.'" It then alleges that "by virtue of the inducement herein set forth * * * defendant retired on October 1, 1959 at the age of 62," but it is not clear from the complaint which inducement is meant  that which started "subsequent to the year 1957," or the assertion that the $37.61 per month would be paid until age 65, or both.
Thereafter, says the complaint, defendants advised plaintiffs that because "the Federal Social Security law was amended to provide for payment of primary Social Security Benefits to retired workers of the age of 62 years," the TERA payments would be terminated when any retiree reached the age of 62. (Defendants contend that the underlying retirement plan so provided.) Plaintiffs therefore demand judgment for the TERA payments to age 65.
On its face, the complaint obviously does not fall within any subdivision of R.R. 4:36-1 which provides, so far as is here pertinent:
*54 "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is
(a) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it.

* * * * * * * *
(c) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."
To prove the allegations of the complaint, each of the five plaintiffs must prove that false representations were made to "induce" him and that he justifiably relied on them to his injury. That false representations were made to the other plaintiffs, or were relied on by them, would not be sufficient to prove his case. On the other hand, under this complaint, no plaintiff would be limited in his proof to evidence common to all plaintiffs. For example, one could introduce proof that misrepresentations were made to him which were not made to any of the others. Although some of the representations may have been made to all of the plaintiffs, they were made by different people to different people, at different times and under different circumstances. Conversely, the defendants would be permitted to prove, if they could, that some plaintiffs did not rely upon the representations, or had no right to do so, even though others did; that some had knowledge which others did not; that some had already applied for retirement before any misrepresentations were made; etc., etc.
Therefore, the rights asserted are not "joint or common" as required by subdivision (a) of R.R. 4:36-1, nor is "common relief * * * sought" as required by subdivision (c). Zaleski v. Local 401, United Electrical, etc., of America, 9 N.J. Super. 206 (App. Div. 1950), appeal dismissed 6 N.J. 109 (1951); Speed v. Transamerica Corporation, 5 F.R.D. 56 (D. Del. 1935); cf. Athas v. Day, 161 F. Supp. 916, 920 (D. Colo. 1958); Joseph v. Farnsworth Radio & Television Corp., 99 F. Supp. 701 (S.D.N.Y. 1951), affirmed 198 F.2d *55 883 (2 Cir. 1952); Pennsylvania Co. For Insurances, etc. v. Deckert, 123 F.2d 979 (3 Cir. 1941).
Athas v. Day, supra, gives a neat demonstration of why the complaint before us is not properly a class action. In that case the complaint alleged six causes of action. The first four alleged "class actions under Rule 23 (a) (3)" based upon violations of the Securities Act of 1933, §§ 77E and 77L, which provided for private causes of action where securities were sold without proper registration or by use of untrue statements. The last two counts set forth individual actions by the named plaintiffs alleging fraud. Defendant moved to dismiss the complaint on the ground that it was not the subject of a class action. The court denied the motion saying that "[t]he first four causes of action in the complaint are statutory, and it is clear that a class action can be brought under the statute," citing Pennsylvania Co. For Insurances, etc. v. Deckert, supra. And, said the court, since "[t]he last two causes of action in the complaint are based on fraud, but are not class actions * * * defendant's contention does not apply to them."
Is there anything in the affidavits which, if added to the complaint, would make it a class action? Plaintiffs suggest only one thing. Attached to Terrell's affidavit is a copy of a paper which he says was given to him before he retired and which sets forth the payments he would receive upon retirement. In that paper it is stated that he would receive TERA of $37.61 per month, which "Stops at age 65 if eligible to Social Security Benefits." Although neither the affidavit nor the complaint says so, plaintiffs' brief states that many retirees received a similar paper. The delivery of such a paper to a plaintiff would not, standing alone, prove a cause of action. It would depend, among other things, when and under what circumstances he received it, what other information he had or received from others, had he already applied for retirement when he received the paper, etc., etc.
Terrell's own affidavit sets forth that Butterworth adopted its retirement plan in 1956; that he was given a booklet explaining *56 the plan and he "was aware of the integration of primary Social Security Benefits with the Retirement Annuity Plan as stipulated in the booklet," but he found the provisions of the plan "to be highly complicated, incomprehensible, and in places, contradictory"; that he "repeatedly requested * * * both for myself and for the employees * * * who were under my supervision as foreman, an interpretation" (emphasis ours) of the plan, but never received one until he was given said paper.
Obviously, others might have understood the booklet, even if Terrell did not. Or they might have received the explanation which was not given to Terrell. On the other hand, each of the five plaintiffs admits in the complaint that he signed the following document:
"I hereby apply for a temporary allowance. I understand that no right to such temporary allowance shall accrue to or be vested in me until the grant thereof and that in the event of any change in the Federal Social Security Act any allowance already granted may be modified, suspended or terminated in accordance with said provisions of the plan."
Neither the complaint nor the affidavit explains how plaintiffs plan to avoid the implications of the signing of the quoted document, but, be that as it may, other employees may not have signed such a document.
For the foregoing reasons, this case is obviously not a "true" class action  i.e., one under R.R. 4:36-1(a)  because "the character of the right sought to be enforced" is not "joint, or common." It is conceded that a true class action binds those members of the represented class not present. System Federation No. 91 v. Reed, 180 F.2d 991, 996 (6 Cir. 1950). These five plaintiffs could not "fairly insure the adequate representation" of the thousand or more who are said to be members of the alleged class. It is quite possible that the present plaintiffs may not prove their cases. If this were held to be a true class action all other early retirees would be bound by a judgment against the plaintiffs. It is obvious *57 that this result would be unfair to those early retirees not personally represented. There is no way in which the present plaintiffs can adequately present the cases of those plaintiffs not present. The contrary of this proposition is also true. That is, if all of the present plaintiffs proved their cases, this would give no indication that those not present must prevail as well. And what if some of the present plaintiffs prevailed and others did not?
Cases finding true classes are those in which it is just to say that if a given member of the class does or does not prevail a like result should follow for other members of the alleged class. Compare in this regard Supreme Tribe of Ben Hur v. Cauble, et al., 255 U.S. 356, 41 S.Ct. 388, 65 L.Ed. 673 (1921); System Federation No. 91 v. Reed, supra.
The chief reason for recognizing spurious class actions under R.R. 4:36-1(c) is to economize the time of courts and litigants. This is articulated in the initial prerequisite of R.R. 4:36-1: "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, * * *." (Emphasis ours) For the reasons indicated, there would be no such economy here, for it would be necessary to try as many individual cases as there were plaintiffs. All would have to be brought before the court, for only those before the court would be affected by the judgment.
For the foregoing reasons the judgment is affirmed.