99 N.J. Super. 295 (1968)
239 A.2d 665
WILLIAM R. BRANCH, ANTHONY VENTRIERA, JACOB SASONKIN, AND BEN GRIFFIES, PLAINTIFFS-APPELLANTS,
v.
J. CHESTER WHITE, HAROLD E. O'NEILL, THOMAS J. REGAN, WILLIAM P. RIDER, DONALD A. REISER AND FRED E. CRANE, OR THEIR SUCCESSORS, TRUSTEES OF THE JOINT PENSION FUND, LOCAL 164, I.B.E.W., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1967.
Decided February 16, 1968.
*298 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. John J. Bracken argued the cause for appellants (Messrs. Bracken and Walsh, attorneys).
Mr. Thomas L. Parsonnet argued the cause for respondents (Messrs. Parsonnet, Parsonnet & Duggan, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal from a judgment entered in favor of defendants in the Chancery Division dismissing plaintiffs' class action for a declaration of their rights in a joint union-management pension fund administered by defendants as trustees.
Since 1947 a series of collective bargaining agreements have been in force between the Hudson-Bergen Division of the New Jersey Chapter of the National Electrical Contractors Association (Association) and Local 164 of the International Brotherhood of Electrical Workers A.F.L.-C.I.O. (Local 164). Prior to 1953 Local 164 had its own pension plan requiring $2 monthly contributions from its members. By a supplement to the collective bargaining contract, entered into on September 29, 1953, the Association and Local 164 provided for the establishment of a new pension fund for employees. Under its terms all contractors doing work within *299 the jurisdiction of Local 164 were required to contribute to the pension fund 5% of the gross labor payroll for each journeyman in their employ. This applied not only to pay of employees who were members of Local 164 but to that of all other employees who were employed by contractors within the jurisdiction of Local 164.
In accordance with the collective bargaining agreement the Association, Local 164 and the defendant trustees (three union-nominated trustees and three employer-nominated trustees) on April 13, 1954 entered into a trust agreement whereby the trustees were granted authority to administer the pension fund. The fund was to be comprised of the 5% contributions by the employers mentioned above, income from investments, and employee payments in the sum of $2 per month. The trustees were designated as the persons to receive the money and to hold the same in trust for the purpose of the trust thus created. They were given power to demand, collect and receive such contributions. The agreement further provided that the trustees were to "promptly agree upon and formulate the provisions, regulations and conditions of the pension program * * * including those relating to eligibility, retirement age, and other terms required to carry out the intent and purposes of the pension program, and any and all other matters relating thereto" which they deemed appropriate for the determination of benefits and the administration of the program. Copies of the pension plan adopted by the trustees were to be distributed upon request "to the Union, the Association or to any Employer." The plan was designed, among other things, to be formulated in such manner as to qualify the employer contributions for deductions for income tax purposes.
Pursuant to the agreement defendants on September 30, 1954 prepared and adopted a pension plan which provided that all journeymen electrical workers working in the jurisdiction of Local 164 were eligible to become participants in the plan. Article II "(Requirements for Participation)" thereof reads as follows:
*300 "Section 1. Employees Eligible to Participate. All journeymen electrical workers working in the jurisdiction of the Local No. 164 are eligible to become Participants in this Pension Plan. An electrical worker who ceased work in Covered Employment before October 1, 1953 is not eligible to become a Participant.
Section 2. Requirements for Participation. A journeyman electrical worker who is eligible to participate shall be deemed a Participant in this Plan if and only if he contributes $2 per month to the Pension Fund starting with the first month in which he is employed in Covered Employment, but in no event for any month before October, 1953. This contribution of $2 a month shall be a condition of participation in this Plan but any person so participating shall not have any right, title or interest in his contribution or in any other part of the Pension Fund except for his entitlement to pension benefits as a result of fulfilling all of the terms of eligibility set forth in this Plan.
Section 3. Termination of Status as a Participant. A person's status as a Participant shall terminate in the month following the month in which he last contributes or in the month he retires. When an Employee ceases to be a Participant for reasons other than retirement he shall not retain any right or interest in the contributions he made to the Pension Fund." (Emphasis ours)
Article III ("Benefit Eligibility and Amounts"), § 1 provides that a participant shall be eligible for a pension if, at retirement, (a) he has attained age 65, (b) has credit for 20 years or more of employment under I.B.E.W. contracts, and (c) has credit for employment under Local No. 164 contracts for the last 10 years (or more) immediately preceding his retirement.[1]
A booklet prepared by defendants, designated "Brief Explanation of the Pension," contained the following questions and answers:
"Q. Who is covered by the pension plan?
A. All journeymen electrical workers who are working under Local No. 164 contracts and who contribute $2.00 a month to the *301 pension fund are covered under the pension plan. An electrician who does not contribute $2.00 a month to the pension fund is not covered under the pension plan.
Q. When does an electrician begin to make contributions to the pension fund?
A. An electrician working under Local No. 164 contracts begins to make contributions to the pension fund as soon as he becomes journeyman. If an electrician was a journeyman in October 1953, his contribution began at that time."
When the pension plan was adopted on September 30, 1954, application for approval by the Internal Revenue Service was made and such approval was subsequently granted.[2] The money paid by Local 164 members under their previous pension plan was returned. The booklet prepared by the trustees, above referred to, was mailed to all employees who were covered under the prior plan, namely, members of Local 164, and to all employers included in the new plan. In addition to receiving the booklet members of Local 164 had the plan explained to them at Local union meetings.
On June 22, 1965 plaintiffs William R. Branch, Ben Griffies, Jacob Sasonkin and Anthony Ventriera, for themselves and other employees similarly situated, brought a class action against defendants pursuant to R.R. 4:36-1. Plaintiffs were members of I.B.E.W. (the international union) but not members of Local 164. When the pension plan was adopted on September 30, 1954 they were "covered employees," i.e., they were employed by contractors who were members of the Association. As such they were "eligible" to become a "participant" in the pension plan under its provisions upon payment of the $2 monthly payment during the first month following its effective date, subject to continuation of such payment each month thereafter. Branch, Griffies and Sasonkin were employed under contracts within *302 the jurisdiction of Local 164 but had not as of the commencement of the action accumulated the years of service or attained the retirement age required for a pension under the plan. Ventriera had worked for over 20 years under the aegis of I.B.E.W. and over 10 years under Local 164 contracts when he retired in 1964 at 65 years of age and thus would presumably qualify for a pension had he been a "participant."
In their action plaintiffs claimed that they and other employees who were not members of Local 164 had never been informed of the terms and conditions of the trust agreement and pension plan and, more particularly, of the requirement that the $2 monthly payments had to be made in order to become a participant in the pension plan and further  that only members of Local 164 had been so informed. They alleged that as representatives of a class of employees similarly situated and having a common interest in the trust agreement and pension plan they were entitled to a declaration of their rights in and to the pension fund and a preservation of the fund to secure such rights.[3] They further alleged that the provisions of the plan had been used to limit pension eligibility to members of Local 164.
Defendants answered alleging that they had made every reasonable effort to notify all employees of the terms and conditions of the trust agreement and pension plan; that plaintiffs had failed and refused to become participants therein and thus were not entitled to its benefits. They further alleged that plaintiffs were not entitled to bring a class action because the rights sought to be enforced did not fall within *303 the provisions of R.R. 4:36-1, and also asserted the defenses of estoppel, waiver and laches as a bar to the action.
The pretrial order limited the issues as follows: (a) whether plaintiffs' action was a class action, (b) whether plaintiffs were entitled now to assert rights as participants in the pension plan, (c) whether plaintiffs had voluntarily failed or refused to become participants, (d) whether plaintiffs were properly representatives of a class, and (e) whether the rights sought to be enforced fall within the provisions of R.R. 4:36-1.
At the trial Ventriera testified that when he retired in 1964 he knew there was some sort of a pension plan in existence but that no one had ever told him anything about it. He first saw copies of the trust agreement and pension plan in his attorney's office in 1965. On June 2, 1965 he wrote a letter to defendants advising that when he retired he was informed by a Local 164 official that he was not eligible for a pension. He asked defendants if this was true. On June 24 he received a reply from defendants' attorney which stated that since he had made no monthly contributions he was not a participant in the pension plan and therefore was ineligible for benefits. The remaining plaintiffs testified, in substance, that while they had been employed by contractors in the Association for years, they first learned that they could have become participants in the pension plan by making the required $2 monthly payments when they saw the trust agreement and pension plan in their attorney's office in 1965.
Defendants conceded that they made no attempt to notify employees, who were not members of Local 164, of their rights or obligations in reference to participation in the plan. They contend that if anyone had the duty of notification, it was the union or the employers. It was undisputed that employers who were members of the Association made contributions to the pension fund based on the gross payroll and regardless of whether or not their employees had become *304 participants. It was also undisputed that only members of Local 164 had ever become "participants" in the plan.
Plaintiffs argue that since attendance by nonmember journeymen at the early meetings of the Local when the plan was put into effect would be unlikely (they deny any attendance at meetings), the trustees should at least have posted prominent notices as to pension requirements at the union hiring hall to which every nonmember (so-called "travellers") had to report for assignment to work. They also point out that nonmembers coming to work in the area in later years would be unlikely to be informed about the pension at meetings or other than through unreliable "scuttlebutt" unless official notices were posted or otherwise given them when they reported for work at the hiring hall, and that the trustees were under a duty to see that they were so informed since they were subject to permanent disqualification for pension if they failed to make the $2 payment in the first as well as every succeeding month of "covered employment."
The trial court entered judgment in favor of the defendants holding that (1) plaintiffs were not actual beneficiaries of the trust and therefore defendants owed them no duty to inform them of the eligibility requirements of the plan, and (2) plaintiffs were not proper representatives of a class and thus were not entitled to bring a class action. Plaintiffs appeal, contending that the court erred in such findings.

I
The trial judge reasoned that because plaintiffs had not made the $2 payments they were only "potential beneficiaries" and not actual beneficiaries of the trust, and accordingly they were not entitled to notice by the trustees of the eligibility provisions of the pension plan, i.e., their right to notification of the $2 eligibility requirement would arise only if they were actual beneficiaries having paid the required $2. We cannot agree with this circular reasoning because if any nonmember of Local 164 had made the initial *305 $2 payment, it would have been because he already knew of and therefore did not need notice. The real question presented is whether one who certainly is "eligible" for a highly advantageous pension and who is unlikely otherwise to obtain timely information as to the requirements for participation, is reasonably entitled to be given notification thereof by the trustees who set up the participation requirement in the plan.
It is undenied that the avowed purpose of the trust agreement of April 13, 1954 was to create a trust to provide retirement benefits for all employees, whether they were members of Local 164 or not. While the term "beneficiaries" does not appear in the trust agreement, article II, section 4, and article I. section 3, clearly indicate that all employees were beneficiaries. While article V, referring to the "collection of contributions" states, among other things, that every journeyman shall pay $2 per month, no reference to such payment appears in the previous articles in the trust agreement which designate and define the beneficiaries of the trust.
The condition that eligible employees must pay $2 during the first month of their covered employment (following the effective date of the plan) and in every month thereafter in order to become and remain participants or thereafter be barred, was first made by defendant trustees when they adopted the pension plan on September 30, 1954.
On the basis of the trust documents we are satisfied that plaintiffs and all other covered employees were intended beneficiaries of the trust, and that their beneficial interest therein was subject to divestment only if they failed to comply with the condition subsequent, i.e., failed to pay the $2 due in October 1954 and each month thereafter.

II
The trial judge held that there was no provision in the trust instrument which imposed an affirmative duty on the *306 trustees to notify plaintiffs of the condition for participation in the pension plan.
Under the trust agreement of April 13, 1954 defendants were delegated the responsibility of formulating the pension plan for the benefit of all covered employees and to promulgate regulations and conditions for participation in the pension fund. When they adopted the pension plan on September 30, 1954, the trustees themselves imposed what might be properly characterized as the "sudden death condition" for participation in the pension plan, namely, that all employees must pay $2 during the first month of their covered employment following the effective date of the plan or be foreclosed from participation. Moreover, their participation would terminate irrevocably once they missed a monthly payment. It is obvious that all eligible employees had to be notified of this condition in order to be able to qualify for participation. Local 164 members were notified both at Local meetings and by the distribution of the booklets  nonmembers were not. The fact that such notification was by the Local rather than by the trustees does not derogate from the fact that these trustees, all of whom were either union or employer designees, knew that the nonmembers of the Local were unlikely to receive timely notification of the requirement for participation unless the trustees saw to it that they got it.
The extent of the duties of a trustee depends primarily upon the terms of the trust. Where there is no provision, express or implied, in the terms of the trust, the duties of a trustee are determined by principles and rules which have been evolved by courts of equity for the governing of the conduct of trustees. 2 Scott, Trusts (3d ed. 1967), § 164, p. 1254. We conclude that to the extent that the law of trusts speaks in terms of the trustee's obligation to "beneficiaries," the employees in plaintiffs' class are such beneficiaries under the pension plan here involved. Trustees are under a duty to the beneficiaries to administer the trust solely in the interest of the beneficiaries. Restatement, Trusts 2d, § 170, p. 364. *307 They have a duty to notify beneficiaries of the existence of the trust and that they are undertaking to act as trustees. Lipic v. Wheeler, 362 Mo. 499, 242 S.W.2d 43, 48 (Mo. Sup. Ct. 1931). They are required to make full disclosure of all facts within their knowledge which are material for beneficiaries to know for the protection of their interests. In re Dryden's Estate, 155 Neb. 552, 52 N.W.2d 737, 746 (Sup. Ct. 1952); Mayfield v. First National Bank of Chattanooga, Tenn., 137 F.2d 1013, 1018 (6 Cir. 1943); Zottarelli v. Pacific States Savings & Loan Co., 94 Cal. App.2d 480, 211 P.2d 23, 28 (D. Ct. App. 1949); see comment (d) to § 173, Restatement, Trusts 2d, pp 378-379; and see generally Bogert, Trusts & Trustees (2d ed. 1952), § 961, and 2 Scott, Trusts (3rd ed. 1967), § 164.
Thus, in the instant case, while the trust agreement contained no specific direction to the trustees to notify employees of the requirements of the pension plan, it is our conclusion that defendants had an affirmative obligation to inform all employees of the conditions for participation in the plan, particularly the "sudden death" condition which they themselves had formulated. As above stated, they were under a duty to fully inform the beneficiaries of the trust of all facts relating to the subject matter of the trust which were essential for the protection of the beneficiaries' interests. Here an injustice was done to the employees in the classes represented by plaintiffs by the trustees' failure to effectively notify them of their rights under the pension plan. We are in full agreement with plaintiffs' argument stated above, that it was reasonable and practicable for the trustees to create some kind of automatic notification procedure not only for those nonmembers of Local 164 working in the area in 1953 and 1954 but those coming into the area to work thereafter.

III
In deciding that plaintiffs were not entitled to bring a class action the court rested on its primary decision that *308 there was no duty of notification by defendants to plaintiffs because they were not "beneficiaries," so that no common question could be said to be presented. Reliance was placed on Terrell v. Humble Oil & Refining Co., 80 N.J. Super. 51 (App. Div. 1963). Our decision above that there was a duty of notification is sufficient of itself, accordingly, to undermine the trial court's conclusion.
In Terrell five plaintiffs brought a class action against their employer alleging that they and other employees had relied upon false representations that they would receive a temporary early retirement allowance if they retired before age 65. The court there said that in order to prove the affirmative allegations in the complaint each of the five plaintiffs individually must prove that false representations were made to induce him to retire and that he justifiably relied on them to his injury; that false representations made to other plaintiffs or relied upon by them would not be sufficient to prove his case, and that no plaintiff would be limited in his proof to evidence common to all plaintiffs. Accordingly, the court held that a class action could not be maintained because the rights asserted were not "joint or common", nor was "common relief" sought. The Terrell decision is not applicable to the present situation.
R.R. 4:36-1 provides:
"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is
(a) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;
* * * or
(c) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."
Here, as we have held, the trustees had a duty to notify plaintiffs and all other covered employees who were not members of Local 164 of the requirements for participation *309 in the pension plan. Their failure to do so is admitted. The character of the right sought to be enforced by the plaintiffs, i.e., a right to participate in the pension plan, was common to the classes represented by the plaintiffs. It involved common questions of law and fact affecting the rights of all such employees and a common relief was sought.
The distinction between improper nonaction by the trustees, i.e., failure of notification, affecting all members of a class with a common interest in the same way, and the situation in the Terrell case, where misrepresentations to each individual and reliance thereon had to be proved as the essential prerequisite for each cause of action, was recognized in York v. Guaranty Trust Co. of New York, 143 F.2d 503 (2 Cir. 1944), reversed on other grounds 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In that case a trustee for noteholders of a corporation which was experiencing financial difficulty determined correctly that noteholders willing to accept 50% cash on their notes and the balance in corporate stock would be better off financially than if the corporation were liquidated. Nonacceptors would not fare as well. A class action was brought by nonacceptors who claimed they suffered losses through a common breach of trust based on inadequate disclosure of the facts by the trustee. The court upheld plaintiff's right to bring a class action stating:
"[T]he trustee may perhaps be able to show, as a defense, that, even if some of these noteholders had not sufficient knowledge of the facts, others who may intervene were aware of those facts, so that their loss did not flow from the trustee's inadequate disclosure. But such facts, if proved, will be by way of defense. The claims here are not individualized fraud claims based upon individual misrepresentations. This action may, therefore, be maintained as a class suit. * * *" (143 F. 2d, at p. 528; emphasis ours).
R.R. 4:36-1 is based on the assumption that the economy of time, effort and expense which will result from a common trial of substantial common issues exceeds the additional burden which may be imposed upon the court and *310 the parties by the necessity of also determining in the common litigation those issues which may be several. Cf. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 915 (9 Cir. 1964). The mere fact that in defense of the action (laches, estoppel, etc.) different factual situations may arise with respect to the defenses as to different plaintiffs does not derogate from the fact that the affirmative cause of action itself has the community of interests and of questions of law or fact which justify the class action concept. We conclude that a proper class action was brought by plaintiffs insofar as any argument contra has been made by defendants or stated by the trial court.

IV
Defendants argue that plaintiffs' action is based on a claim that Local 164 and the Association discriminated against them by depriving them of pension benefits because they were not members of Local 164. They allege that such an action is preempted by the National Labor Relations Act and the Labor Management Relations Act and therefore the Chancery Division lacked jurisdiction over the subject matter.
This defense was not raised in the original pleadings or the pretrial order and defendants have not cross-appealed from the Chancery Division judgment. The subject of preemption was first raised at the trial in a colloquy between the court and counsel. However, we are satisfied that the contention lacks merit. While the record indicates there were some references made by counsel concerning charges of an unfair labor practice during the course of the trial, plaintiffs' suit as pretried and tried is essentially based on a claim that defendants, as trustees, violated their fiduciary obligations owed to plaintiffs resulting in plaintiffs' loss of participation rights in the plan. This is not an action against Local 164 or the Association based on charges of commission of unfair labor practices. Local 164 and the Association are not parties.
*311 29 U.S.C.A. § 158, in defining unfair labor practices refers exclusively to acts of employers, employees and unions; § 160(a) grants exclusive jurisdiction to the National Labor Relations Board to hear claims of unfair labor practices. Defendants' status in the present suit is not that of an employer, employee or union  the action was brought against them as trustees of the pension fund and plan.
Defendants seem to contend that under 29 U.S.C.A. § 186, where any suit is brought involving an employer-union pension fund the state courts are denied jurisdiction. This is not so. Section 186(a) and (c) proscribe certain employer contributions to unions and employees, exempting payments made into trust funds. Section 186(e) grants exclusive jurisdiction to federal courts only over disputes involving the proscribed actions. In Employing Plasterers' Ass'n v. Journeymen, etc., 279 F.2d 92, 97 (7 Cir. 1960), the court clearly indicated that employees have a right to bring an action in a state court under established principles of equity where their action is based on an alleged misuse of funds held in trust for their benefit. Cf. Local No. 2, etc. v. Paramount Plastering, Inc., 310 F.2d 179 (9 Cir. 1962); Cox v. Superior Court of San Bernardino County, 52 Cal.2d 855, 346 P.2d 15 (Cal. Sup. Ct. 1959); Kane v. Shulton, Inc., 189 F. Supp. 882 (D.C.N.J. 1960); Holton v. McFarland, 215 F. Supp. 372 (D.C. Alaska 1963); Sanders v. Birthright, 172 F. Supp. 895 (D.C. Ind. 1959). The Chancery Division was vested with jurisdiction to hear the instant case.

V
Defendants contend that plaintiffs are estopped from seeking relief under the doctrine of laches  that they have slept on their rights since 1954. They claim that if plaintiffs and other employees similarly situated are now permitted to participate in the pension fund by making the required retroactive payments, those employees who have made pension contributions throughout the years will be greatly prejudiced.
*312 Whether a represented class-plaintiff in this case should be precluded from making retroactive payments in order to participate in the pension program on grounds of estoppel, laches or waiver must depend upon the facts adduced at the trial, and defendant has the burden of proving these affirmative defenses. The trial judge did not make an unequivocal finding on these issues,[4] probably because his decision on the other issues was dispositive. Accordingly, the case must be remanded for a determination of these issues with regard to all the plaintiffs in this action, both nominal and represented in the class. Obviously, laches or estoppel, even if good defenses as to some of the older employees in the classes, might not be as to the newer ones. Individualized determinations must be made as to each one.
Defendants urged at the oral argument that there is no likelihood of causal connection between absence of notification to, and loss of pensions by, the so-called "travellers" (nonmembers of Local 164). The contention is that such workers came to the area of the Local's jurisdiction temporarily and would not expect to be employed under local contracts for the requisite ten years; hence were unlikely to pay the nonrefundable $2 a month. There is inadequacy of evidence in the present record for us to pass on this point, and in any case it should initially be decided at trial level. But certain vulnerabilities in the position are apparent.
By the very provisions for participation by travellers in the pension plan it was obviously contemplated that some of them might elect to pay the nominal $2 monthly against the chance, even if problematical, of eventually qualifying for the substantial pension. Moreover, as is seen to have eventuated in many instances, many so-called "travellers" are not really travellers, but rather journeymen originally from elsewhere who settle in the Local 164 jurisdiction permanently *313 because there is no work for them in their trade where they come from, and they are for one reason or another not readily admitted to or apt to apply for membership in the local union.[5]
Moreover, the burden of proof should be on the defaulting trustee clearly to disestablish causal connection between default and loss to the beneficiary, rather than the contrary. Cf. Harris v. Perl, 41 N.J. 455, 464-465 (1964). Further, escape of a trustee from liability by reason of breach of trust can be defeated if the loss probably occurred by reason of the breach. A showing of certainty is not required. Restatement, Trusts 2d, § 205, comment (f), p. 460. In this context the criterion should be applied with liberality to plaintiffs since they seek not damages against the trustees personally but equitable restitution to a participation in the fund.
Finally, it is obvious that many procedural and substantive problems not argued below or here, or not decided, must be met on the remand, but we think the matter will be most effectively handled below if we refrain from further comments except for the following.
First, it may be advisable to create two separate classes of plaintiffs: (a) those whose pensions would have matured if participation had been consummated, and (b) those whose pensions would not yet have matured.
Second, if any merit is found in plaintiffs' basic claims, the flexible processes of an equity tribunal are equal to the making of such adjustments in the plan as are necessary to accommodate some relief to plaintiffs and a just moderation of the inevitably adverse impact thereof upon the fund and the rights of presently recognized participants in the plan. Consideration may be given to the intervention or joinder of Local 164 and the Association for these purposes.
Reversed and remanded for further proceedings in accordance with this opinion. No costs on this appeal.
NOTES
[1] During trial defendant offered proof of an amendment apparently adopted at or about the time of institution of this action increasing the requirement for employment under Local 164 contracts to 20 years. The applicability of this amendment to plaintiffs was not decided below and we do not deal with it.
[2] We are informed by plaintiffs that under the Internal Revenue Law and regulations governing such pension plans, while plans may provide for denial of participation for failure to enter plan upon becoming eligible, "Adequate notice, however, must be given the employee and the consequences of his failure to comply must be clearly presented to him * * *."
[3] Only preliminary and inconclusive efforts were made at the trial to show how many non-members of Local 164 are potential members of the class. An exhibit (D-2) was discussed at the trial in this connection but is not contained in the appendix. It was submitted to us at our request with a memorandum of explanation thereof by the defendants. On what is before us, and in the condition of the proofs, no real conclusions can be drawn from this exhibit except for the probability that persons in the class are sufficiently numerous to justify a class action.
[4] He said: "It is difficult to accept the fact that plaintiffs were completely ignorant of the existence of the plan, although there is nothing in the record to refute this fact."
[5] As conceded by defendants at the argument.