In re Paul Jeffrey MASSARO, Debtor.

**Jeffrey Massaro and David Massaro, Plaintiffs,**

**v.**

**Paul Jeffrey Massaro, Defendant.**

Bankruptcy No. 97–24331 (NLW).
Adversary No. 97–2549(NLW).

United States Bankruptcy Court, D. New Jersey.

July 7, 1999.

O. Gene Hurst, Clark, NJ, for debtor.

Thomas J. Hanrahan, Glen Rock, NJ, for Jeffrey and David Massaro.

## AMENDED OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

THIS MATTER comes before the court by way of the debtor's motion to set aside the default and final judgment of default, and to extend the time to answer an adversary complaint. In response to the debtor's motions, the plaintiffs, Jeffrey and David Massaro, have filed a cross motion to dismiss the debtor's Chapter 13 petition.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference by the United States District Court of New Jersey dated July 23, 1984. Moreover, this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (I). The following represents this Court's findings of fact and conclusions of law.

## BACKGROUND

On April 4, 1987, Agnes Massaro ("Agnes") died, leaving her residuary estate to her grandson, Paul Massaro ("debtor"), and her two great grandsons, Jeffrey and David, in three equal shares. In paragraph FOURTH, the will stated in relevant part:

FOURTH: All the rest, residue and remainder of my estate I hereby give, devise and bequeath into three (3) equal parts as follows:

a) One (1) equal part unto my grandson, PAUL J. MASSARO;

b) Two (2) equal parts unto my said grandson, PAUL J. MASSARO, IN TRUST, NEVERTHELESS, for the following uses and purposes:

1) To divide the principal of the trust into two (2) equal parts and hold one such part for the benefit of each of my great grandsons (sic), JEFFREY MASSARO and DAVID MASSARO, and to hold, manage, invest and reinvest each such trust fund and to apply the net income therefrom or such portion thereof and such portion of the principal as may (sic) said Trustee may deem necessary for the benefit of such great grandson, for his maintenance, education and welfare until he shall attain the age of eighteen (18) years, at which time such trust fund and all accumulated income, if any, shall be paid over to such great grandson.

2) I hereby direct that any other monies received by either or both my great grandsons by reason of my death, shall be added to his trust fund hereinabove set forth.

3) In the event that either of my said great grandsons shall die before the age of 18 years, the trust fund set aside for him shall terminate and one-half (½) thereof shall be added to the trust fund of the surviving great grandson and the other half paid and transferred to my grandson, PAUL J. MASSARO.

In his capacity as trustee, the debtor deposited Jeffrey and David's shares of the estate, ($63,646 for each) in bank accounts on which he was designated as trustee. Thus, it appears that from the outset the debtor recognized and acknowledged the fiduciary role he performed on behalf of his sons.

On April 3, 1995, Jeffrey and David brought an action against the debtor in the Superior Court, Passaic County to obtain an accounting from the debtor with regard to his management of the funds he held in trust for their benefit. On December 1, 1995, the Superior Court ordered the debtor to provide an accounting as to the trust funds. Thereafter, apparently in response

to the contention by Jeffrey and David that the debtor's accounting was inadequate, the Superior Court appointed an expert to review the accounting records submitted by the debtor and to render an objective accounting.

The court-appointed expert issued her report on April 10, 1997 (Hanrahan Cert., Exh. A). In her report, she concluded that it was impossible to create an accounting that complied with the relevant New Jersey court rules, in that the debtor's documentation was incomplete. (*Id.* at ¶ 3). For example, she found that for some expenditures the debtor failed to provide back-up documentation, or if the debtor provided documentation, the documentation was incomplete and did not justify the expenditure. (*Id.*). Among the inappropriate expenditures were (i) payments of $95,489 which apparently went to satisfy a third mortgage on the marital home; (ii) payment of the debtor's legal fees; (iii) payment of his personal credit cards, and (iv) payment of a security deposit for the debtor's apartment. (*Id.* at ¶ 4). Further, the expert found that the debtor's failure to properly designate bank accounts and his pattern of intermingling funds made it difficult to trace the trust funds. (*Id.* at ¶ 6(b)). She further concluded that the schedule provided by the debtor made it impossible to create an accurate statement of income or changes in investment. (*Id.* at ¶ 7). Indeed, the expert stated that the trusts were neither properly created nor managed. (*Id.* at ¶ 4).

On April 14, 1997, four days after the court-appointed expert submitted her negative report, the debtor filed a Chapter 7 petition, listing $116,248 in unsecured debt, primarily from credit cards. In addition, the debtor listed his sons as creditors holding disputed claims of an unknown amount.

According to the debtor, the cost of litigating the accounting action contributed to his need to file a Chapter 7 petition. In addition, he and his wife had been embroiled in a divorce proceeding since December, 1993 and the litigation costs and support obligations which arose from that action also allegedly contributed to the debtor's Chapter 7 filing.

On July 15, 1997, Jeffrey and David filed the instant adversary proceeding in which they sought a determination of non-dischargeability for the losses they suffered due to the debtor's mismanagement of the trust funds. The debtor failed to timely answer the complaint within the time allowed. Hence, Jeffrey and David moved for default. On November 19, 1997, default was entered and a proof hearing was scheduled for December 22, 1997. The court notified the debtor of the date and time of the hearing. However, the debtor failed to appear at the December 22, 1997 proof hearing. Upon hearing the proofs submitted by Jeffrey and David, the court made a finding of non-dischargeability and, thereafter, it entered judgment for the plaintiffs on January 9, 1998. In February, 1998, Jeffrey and David initiated supplementary proceedings to determine the assets of the debtor from which their judgment could be satisfied. Thereafter, Jeffrey and David obtained a wage garnishment which they served on the debtor's employer during the summer of 1998. In response to the wage garnishment, the debtor filed a Chapter 13 petition on August 21, 1998. On January 11, 1999 the debtor also filed the instant motion to vacate the default judgment and permit a late answer to be filed in the adversary proceeding.

The debtor contends that his failure to answer the adversary complaint or otherwise participate in the litigation of the adversary proceeding resulted from the fact that he was suffering from depression during the time the action was pending. The debtor claims that not only was he depressed because he was estranged from his sons, but also because he had learned of a love affair between his wife and his business partner. The debtor claims that as a consequence of this familial turmoil his depression was of such a magnitude

that his doctor placed him on Prozac. Further, the debtor claims that because his mental health was his primary concern, "when the attorney for his children filed the adversary proceeding, he walked away." (Debtor's brief at p. 29). The debtor urges the court to find that this recitation of facts constitutes excusable neglect which warrants granting his motion to vacate the default judgment.

Not surprisingly, counsel for Jeffrey and David is unimpressed by the debtor's claim that depression caused the debtor's failure to litigate. Counsel for Jeffrey and David does recognize that the debtor did not actively litigate the adversary proceeding. However, he notes that the debtor was aware of the consequences of the adversary proceeding in that after the adversary proceeding was filed the debtor made a settlement offer in late September, 1997. (Hanrahan Cert., Exh. B). The court notes that this offer was made after the time to answer the complaint had expired, but before the court scheduled a proof hearing. Moreover, in February, 1998, the debtor was obviously aware of the judgment as he responded to the supplemental proceedings which Jeffrey and David brought in furtherance of their collection efforts. As part of his response, the debtor submitted a letter to counsel for Jeffrey and David in which he itemized his objections to the amount of the judgment. (*Id.*, Exh. C). In this February correspondence, the debtor did not indicate that he suffered from any incapacity as a result of depression or any other cause. Counsel for Jeffrey and David also observes that the debtor does not supply any doctor's statement or any other documentation that corroborates the debtor's assertions as to the alleged severity of his illness.

In addition to his excusable neglect argument, the debtor also submits that he has a meritorious defense. He contends that he can provide a proper accounting of his administration of the funds held in trust which shows that his ex-spouse benefitted from disbursements from the trusts totaling $119,701. The debtor argues that his ex-spouse is thus liable to Jeffrey and David for that sum, and "that there is a constructive trust on her home in the amount not less than $119,701." (Debtor's Memo. of Law at pp. 22–23).

Counsel for Jeffrey and David also rejects this argument and characterizes it as gibberish. He notes that the debtor's alleged meritorious defense is based on the same documents that the court expert found so deficient that a meaningful accounting could not be created.

## DISCUSSION

### I.

■ The issue before the court is whether the debtor has stated sufficient grounds to justify vacating the default judgment entered against him on January 9, 1998.

■ Pursuant to FED.R.CIV.P. 55(c), incorporated by FED.R.BANKR.P. 7055, a bankruptcy court may set aside an entry of default "for good cause shown." If the court has entered a judgment by default, the court may set aside the default judgment "in accordance with Rule 60(b)." In this case, both an entry of default and a default judgment have been entered. Accordingly, Rule 60(b) controls the outcome of the debtor's motion.

Under Rule 60(b), the right to move to vacate a default judgment is not completely unfettered. In the matter at hand, the debtor bases his motion largely on an excusable neglect theory. Pursuant to Rule 60(b), a motion based on excusable neglect must be made within a reasonable time and "not more than one year after the judgment ... was entered or taken." The debtor barely has met the one year limitation set forth in Rule 60(b). The court entered a default judgment against the debtor on January 9, 1998. January 9, 1999 fell on a Saturday. The debtor filed his motion to vacate the default judgment on Monday, January 11, 1999. Pursuant to FED.R.BANKR.P. 9006, the motion is con-

sidered within the one year time period because when the last day of a time period falls on a Saturday or Sunday, the running of the time period is extended through the next regular court business day.

▇ Generally, default judgments are not favored and, in a close case, any doubt as to whether a default judgment should be vacated must be resolved in favor of setting aside the default and reaching a decision on the merits. *Zawadski De Bueno v. Bueno Castro,* 822 F.2d 416, 420 (3d Cir.1987); *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 122 (3d.Cir.1983). Although the debtor's motion is not time-barred under Rule 60, he must still satisfy a high burden to show that the delay was reasonable. *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648, 656 (2d Cir.1979). It is well-established in the Third Circuit that a court ruling on a motion to vacate a default judgment must consider the following factors: (1) whether the plaintiffs will be prejudiced if the judgment is vacated; (2) whether the defendant has a meritorious defense to the underlying action; and (3) whether the default was the result of the defendant's culpable conduct. *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.,* 756 F.2d 14, 19 (3d Cir.1985); *Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir.1984); *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir.1984); *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656 (3d Cir.1982). The court will consider each of the factors seriatim.

*Prejudice to Plaintiffs*

▇ In furtherance of his motion to vacate the default judgment, the debtor has sufficiently demonstrated that Jeffrey and David would not be unfairly prejudiced. In *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir.1993), the court held that "delay standing alone does not establish prejudice." Rather, prejudice in the context of a motion to vacate a default judgment requires evidence of "the loss of evidence, the unavailability of witnesses or roadblocks to discovery." *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 993 (E.D.N.Y.1995).

In this case, there is no indication that Jeffrey and David are prejudiced in any way other than by sustaining another delay in their efforts to collect their judgment against the debtor. Jeffrey and David have not indicated that evidence or witnesses will be lost as a result of further delay. Hence, the court finds that Jeffrey and David would not be prejudiced if the court vacated the default judgment.

*Meritorious Defense*

▇ A meritorious defense is established by a demonstration that the factual and legal allegations, if established at trial, would constitute a complete defense. *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 869–70 (3d Cir.1984). *See also Enron,* 10 F.3d at 98; *Brendle's v. Dazey Corp.,* 222 B.R. 770, 772 (Bankr. M.D.N.C.1997).

The debtor argues that he might prevail at trial because some of the disbursements made from the funds he held in trust were for purposes which are consistent with the terms of Agnes' will. Specifically, he claims that he disbursed $36,657 to fund Jeffrey's college education. Additionally, the debtor claims that his former wife, Valerie, should be held responsible for the diminution in Jeffrey's and David's trust funds because she received a benefit when the trust funds were used to satisfy a third mortgage on the marital home. The debtor claims that Valerie received the sale proceeds when the marital home was sold and thus, a constructive trust should be placed on her present home. The debtor does not specifically address any of the findings of the state court expert with regard to his failure to properly account for his management of the trust funds.

▇▇ Code § 523(a)(4) provides, *inter alia,* for the nondischargeability of a debt incurred by fraud or defalcation while acting in a fiduciary capacity. The meaning of the term fiduciary in this section is

limited to instances involving express or technical trusts. *In re Kaczynski*, 188 B.R. 770, 773 (Bankr.D.N.J.1995). An express trust exists where there is (i) a declaration of trust, (ii) a clearly defined trust res, and (iii) an intent to create a trust relationship. *Id.* at 774 (citing *In re Librandi*, 183 B.R. 379, 382 (M.D.Pa. 1995)).

In this matter, the elements of an express trust have been met. First, Agnes clearly made a declaration of trust in her will when she bequeathed "[t]wo (2) equal parts unto my said grandson, PAUL J. MASSARO, IN TRUST, NEVERTHELESS ... to divide the principal of the trust into two (2) equal parts and hold one such part for the benefit of each of my great grandsons (sic), JEFFREY MASSARO and DAVID MASSARO." Further, the trust res consisted of the $127,292 received from the estate by the debtor. Finally, by the language employed in the will, Agnes obviously intended to create a trust relationship with the debtor acting as trustee for his then minor children. Indeed, by depositing the monies bequeathed to Jeffrey and David into bank accounts on which he was designated as trustee, the debtor acknowledged his capacity as trustee. He cannot now disclaim his fiduciary responsibility.

For purposes of § 523(a)(4), the next issue is whether the debtor committed defalcation while acting in his fiduciary capacity. The weight of case authority holds that affirmative misconduct is required to constitute "defalcation." *In re Ellenbogen*, 218 B.R. 709, 712–18 (Bkrtcy.S.D.N.Y. 1998). To establish a meritorious defense, the debtor must also make a proffer that counters the evidence of his fiduciary misconduct.

It is well recognized that the most fundamental duty owed by a trustee to trust beneficiaries is the duty of loyalty. *See* SCOTT ON TRUSTS § 170 (4th ed.1987). Accordingly, courts in New Jersey have held that the trustee has the duty to administer the trust solely for the benefit of the beneficiaries. *Gilliam v. Edwards*, 492 F.Supp. 1255, 1266 (D.N.J.1980); *Branch v. White*, 99 N.J.Super. 295, 239 A.2d 665, 671 (App.Div.1968) *cert. denied*, 51 N.J. 464, 242 A.2d 13 (1968). Further, a trustee has a duty to keep trust property separate from his individual property. *Coffey v. Coffey*, 286 N.J.Super. 42, 668 A.2d 76, 82 (App.Div.1995). Perhaps most critically, a trustee is held to have a duty to keep clear and adequate records and accounts. *Matter of Herr*, 22 N.J. 276, 125 A.2d 706, 712 (1956). Thus, where a trustee fails to keep proper accounts, "all doubts or obscurities are resolved against him and not in his favor." *Id.*

Should a trustee violate any duty which he owes to a beneficiary, he is chargeable with:

(a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or

(b) any profit made by him through the breach of trust; or

(c) any profit which would have accrued to the trust estate if there had been no breach of trust.

*In re Imperial "400" National, Inc.*, 456 F.2d 926, 931 (3d Cir.1972).

Based on the evidence presented to it, including the report made by the state court expert, and in keeping with the above-cited authority this court found that the debtor's breaches of fiduciary duties constituted defalcation under § 523(a)(4) and found the disputed debt to be nondischargeable.

To establish his meritorious defense, the debtor merely proffers to this court the very same accounting records which the state court examined and found so inadequate. In her report, the expert concluded that "it is impossible to prepare a full accounting in compliance with [New Jersey Court Rule] R. 4:87–1 et seq." Further, the expert found that "it is undisputed that the trusts for both Jeffrey and David were neither properly created nor managed. Some of the funds were used for "clearly

invalid" purposes such as payments for an equity line of credit and/or third mortgage ($95,489) and disbursements for Paul's divorce attorney, credit cards and apartment security." Jeffrey and David point out that the debtor does not address any of the inadequacies identified by the state court expert. In the absence of some evidence from the debtor that casts doubt on the conclusions reached by the state court expert this court finds that there is no likelihood of a different result on that issue and thus, no meritorious defense stated. Accordingly, the court finds that the debtor has not demonstrated a meritorious defense to the underlying action.

■ Equally without merit is the debtor's contention that he is not liable for the breach of his fiduciary duties because his wife benefitted from the use of the trust funds to satisfy the third mortgage on the marital residence. Even assuming the debtor's allegations are true, the debtor still has not demonstrated the existence of a meritorious defense. The debtor does not allege that this use of the trust funds was without his knowledge or permission. The unalterable fact is that the debtor was at all times the fiduciary responsible for the management of the trust funds and thus is directly responsible for any loss. That Jeffrey and David might have another cause of action against another party does not negate the debtor's liability.

■ Finally, the debtor asserts that the default judgment should be vacated because it might be reduced by the sum of $36,657, which he disbursed from the trust funds for Jeffrey's post secondary education. The debtor presumably rests this position on the language of the will which permits the trustee to apply the funds for education purposes. However, the debtor's argument fails because he has not proffered anything to suggest that when the trust funds were used for Jeffrey's education the costs of that education were not his support obligation in the first instance, and that he could not meet that obligation. The debtor cites *Cohen v. Co-*

*hen,* 258 N.J.Super. 24, 609 A.2d 57, 60 (App.Div.1992) as illustrative of the duties of a custodian under the Uniform Gift to Minors Act ("UGMA"). Among the disputed issues before that court was whether it was proper for the custodian to have reimbursed herself from the UGMA custodial account for educational expenses the custodian made from her personal funds on her daughter's behalf. The Appellate Division surveyed the law from other jurisdictions as well as from New Jersey estate law. It concluded that "despite the broad language of the statute purporting to confer wide discretion on the custodian, a custodian who is also a parent cannot properly use assets of a UGMA account to defray the parent's legal obligations to a child if the parent is financially able to support the child." 258 N.J.Super. at 30–31, 609 A.2d 57. Given the obligation of a trustee to manage the trust solely for the benefit of the beneficiary, the debtor certainly must have a like obligation not to use the trust funds to meet his support obligations. The debtor has not proffered any evidence that Jeffrey's educational needs were not his support obligation as Jeffrey's father or that he could not meet that obligation.

*Excusable Neglect*

■ A defendant seeking to vacate a default judgment due to excusable neglect must show that the defendant's own culpable conduct did not lead to the default judgment. *See Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir.1982). In the Third Circuit, a defendant's conduct is considered culpable where the court finds that the conduct was willful or in bad faith. *Hritz v. Woma Corporation,* 732 F.2d 1178, 1182 (3d Cir.1984); *Feliciano v. Reliant Tooling Co., Ltd.,* 691 F.2d 653, 657 (3d Cir.1982); *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 122 (3d Cir. 1983).

■ In *Hritz,* the court plainly stated that mere negligence does not amount to

culpable conduct. 732 F.2d at 1183. However, it also observed that "[r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard." *Id.* In *Hritz*, Woma was virtually bombarded with notice of Hritz's personal injury claim both before and after the complaint was filed. *Id.* Woma was also provided with notice of the evidentiary hearing to set damages. *Id.* Woma did not respond to any of these notices. *Id.* Thereafter, Hritz's counsel informed Woma that he intended to execute on the judgment. *Id.* Only some weeks after that notification did Woma move to vacate the default judgment. *Id.* The Third Circuit observed that on the face of the record the trial court could easily have found culpable conduct. *Id.* at 1183. However it remanded the matter because at the time it ruled the trial court did not have the benefit of the Third Circuit rulings in *Feliciano* and *Gross. Id.*

Similarly, in *In re William Cargile Contractor, Inc.,* 209 B.R. 435 (6th Cir. BAP 1997), though the defendant acknowledged receiving the summons and complaint when it was served, the defendant did nothing further. Over eight months after entry of the default judgment, the defendant moved to set aside the default judgment. *Id.* at 439. The court considered this deliberate delay to constitute culpable conduct on the defendant's part. *Id.* at 438–39. For this reason, the Sixth Circuit reversed the bankruptcy court's order vacating the default judgment. *Id.* at 439.

In this case, the chronology of the debtor's actions reveals a similar conscious and deliberate choice by the debtor not to defend. As the court described earlier, Jeffrey and David pursued the debtor in state court litigation and when the debtor filed a Chapter 7 petition four days after the court-appointed expert rendered a report which was unfavorable to the debtor, Jeffrey and David filed an adversary complaint in the Chapter 7 case. Although the debtor did not file an answer, he did make a settlement offer shortly after he received the complaint. Thus, he was aware of the adversary proceeding from its inception. The debtor received notice of the proof hearing, but did not appear. In February, 1998, the debtor responded to an information subpoena. At that time, he did not object to the entry of default nor did he seek to vacate the default. Moreover, the debtor did not mention any incapacity at that time. The debtor did nothing, despite his knowledge of the judgment, until Jeffrey and David effected a wage garnishment. Even then, his first effort was not to move to vacate the default judgment. Rather, he filed a Chapter 13 petition. As in *Hritz v. Woma* and *Cargile Contractor,* the facts before the court establish that the debtor knowingly did not respond to the default judgment until an unreasonably long period of time had passed.

The debtor's argument that mental incapacity can establish excusable neglect is not without merit. Courts have found that a defaulting defendant's conduct was not culpable where a defendant's failure to answer was due to mental illness. *In re Angeli,* 216 B.R. 101, 107 (Bankr.E.D.N.Y. 1997). In *Angeli,* the debtor submitted a letter from his treating physician to support his motion to vacate the default judgment. *Id.* In the letter, the physician stated that the debtor suffered from chronic depression which was classified as moderate to severe. *Id.* The physician also stated that the debtor was unable to cope with the reality of everyday living and that he suffered from avoidant personality disorder. *Id.* Based on that record, the court vacated the default.

Although the debtor claims that he did not defend the adversary proceeding because of his depression, this case is quite distinguishable from the *Angeli* case. Here, the debtor has failed to submit any documentation to support his claim of mental incapacity. Unlike the *Angeli* debtor, there is no physician's diagnosis of the debtor's alleged mental illness. Nota-

766

bly, the debtor himself did not even submit a certification or affidavit in which he explains his mental incapacity. Instead, the debtor merely adopts the statements of his attorney. Indeed, the debtor's behavior is indicative of conscious, deliberate acts. For example, his settlement offer after the complaint was filed and his post-judgment correspondence disputing the amount of the judgment contradict his claim of incapacity. Because the debtor has not substantiated his alleged incapacity, the court does not give credence to this contention and finds that the debtor failed to defend the adversary complaint due to his culpable conduct. Therefore, the court finds that the debtor has not established that excusable neglect led to the entry of a default judgment.

## II.

In response to the debtor's motion to vacate the default judgment, Jeffrey and David cross-moved to dismiss the debtor's Chapter 13 case. The cross-motion is procedurally flawed. The instant motion was brought by the debtor in the Chapter 7 adversary proceeding. Jeffrey and David should have brought their motion in the debtor's subsequently filed Chapter 13 case. However, Jeffrey's and David's cross-motion is moot because the Chapter 13 case was dismissed by Chief Judge Rosemary Gambardella on recommendation of the standing Chapter 13 trustee on February 8, 1999. Therefore, the cross motion to dismiss the debtor's Chapter 13 petition is denied.

## CONCLUSION

For the foregoing reasons, the debtor's motion to vacate the default judgment entered by this court on January 9, 1998 is denied. As to the cross motion to dismiss the Chapter 13 case, the cross-motion is also denied.