# COURT OF ERRORS AND APPEALS.

JUNE TERM, 1857.

Between CAROLINE HOLCOMB, by her guardian, respondent, and JOHN CORYELL, ALEXANDER CORYELL, and ASHER READING, executors of John Holcomb, appellants.

Where a motion is made, founded on prior proceedings on the cause, to require trustees, who are defendants, to give security, or to discharge them, and appoint a receiver, the proper procedure is by petition.

Security will be required of trustees, to whom no moral turpitude is imputable, if they have made a palpable mistake as to their obligations and duties, and have displayed ignorance and negligence in the management of the trust fund, and have defended the suit in disregard of the rights of an infant complainant.

Security required of a trustee, who, having neglected to account in the proper court, as required by the statute, when called upon to account, refused and evaded doing so, and who, when compelled to account, was found to be the principal debtor of the estate.—By the CHANCELLOR.

A testator has a right to impose confidence in whom he pleases, and if he selects as his representative an irresponsible or insolvent person, in the absence of fraud or misconduct, or breach of trust, security cannot be required of such executor.

But it is a well settled rule in equity that, if the acts or omissions of the trustee be such as to endanger the trust property, or to show a want of honesty or a want of proper capacity to execute the duties, or a want of reasonable fidelity, equity will remove such trustee.

The case sufficiently appears from the following opinion, furnished by the Chancellor, as containing his reasons for the decree appealed from.

THE CHANCELLOR. The bill was filed, on behalf of an infant complainant, to compel the defendants, as executors of the will of John Holcomb, deceased, and as trus-

tees under that will, to account for the estate of the testator that had come to their hands, and for the execution of their trust. The defendants answered the bill. The cause has progressed to the taking of the account before the master, and a decision of the court upon exceptions taken by the defendants to the master's report. On behalf of the complainant, a motion is now made to change the trustees, appoint a receiver, or to compel the defendants to give security for the faithful disposition of the trust funds at their disposal. The proceedings in the suit, as far as it has already progressed before the court, are relied upon to sustain the motion. The proper practice would have been to have presented this matter by petition, so that the grounds upon which the application is made would have assumed a more definite and permanent shape before the court as a matter of record. The departure from the practice is not so material in this case, in consequence of the former proceedings, which are before the court, being the groundwork of the motion. As no objection was made, on the argument, as to the manner of presenting the question, I do not deem it necessary for the court to interpose any objection. I feel constrained, as a matter of duty, to grant the motion, so far as to order security to be given. I do not make this order so much on the ground that the defendants have not properly exercised the discretion confided to them by the testator, as because their conduct, in the execution of their trust, amounts to fraud upon the rights of the infant complainant, and to an abuse of the trust which the testator primarily intended for her benefit. I am not disposed to impute moral turpitude to either of the defendants in the discharge of their duties. But there has been such a palpable mistake on their part, as to the obligations and duties imposed upon them—such a disregard of the rights of this infant, in the manner in which this suit has been defended, and such ignorance and negligence in the management of the large fund at their disposal, as

Holcomb v. Coryell.

imperatively demand of the court to extend to the complainant that protection which she invokes, and to which she is entitled when her property is in jeopardy.

It does appear to me that no one with a just appreciation of the duties which rest upon a trustee, and particularly when the object of the trust is an infant of tender years, as in this case, can look through these pleadings and evidence without arriving at the conclusion that John and Alexander Coryell should be compelled to give some security for the faithful disposal of the trust funds which the testator confided to them.

The first step they took in the discharge of their trust presents them very unfavorably to the consideration of the court. After proving the will before the ordinary, they filed in the office of the Prerogative Court an inventory and appraisement of the personal estate and effects of their testator, amounting to the sum of $85,837.76. Their inventory states merely, in the gross, the value of the personal goods and chattels, and also the amount, in gross, of the testator's bonds, mortgages, books of account, and other securities, without specifying a single security, by whom given, or its amount and value.

It is so brief that I may as well give it as it appears on the file in the office.

| | |
|---|---:|
| Purse and contents, | $5.24 |
| Horses, sheep, and cattle, | 599.00 |
| Hay, grain, and fodder, | 929.00 |
| Household and kitchen furniture and utensils, | 300.37 |
| Bonds, notes, and books of account, | 84,004.15 |
| | $85,837.76 |

Such an inventory might have been filed through ignorance. But these defendants have deprived themselves of the benefit of such a consideration. The complainant filed

her bill, complaining of this inventory, and calling upon the defendants for an account, and to state the particulars which constituted the amount of $85,837.76. The Coryells, instead of availing themselves of the opportunity thus afforded them of placing themselves right upon the record, put in their answer, insisting that the inventory and appraisement filed by them was all that the law required. And they refused to give the particulars of the inventory and appraisement. Perhaps charity would have required of us still to extenuate the fault of the Coryells in this particular, by the consideration that their answer was filed under the direction and advice of counsel. But the fact, revealed by the answer of Asher Reading, that the true inventory and appraisement exhibits John Coryell as a debtor to this estate to an amount of upwards of $32,000, and Alexander Coryell upwards of $3600, is a very unfavorable explanation, for the Coryells, of the reason which induced them to file such an inventory, and then to persist in the refusal to give the particulars of it, on the ground that the inventory, as filed, was all that the law required of them.

It appears to me that when a trustee has neglected to account in the proper courts, as required by the statutes, and when called upon to account, refuses and evades doing so, until, by the authority of the court, he is compelled—and that when the account is furnished, not voluntarily, but by force of law, it turns out that the trustee himself is the principal debtor of the estate, and for which indebtedness the estate has little or no security, the conduct of the trustee is sufficient, of itself, to justify the court in compelling the trustee to secure the trust fund. It is vain for the defendant to say, in reply, that the debts due from the Coryells to the testator remain in the same shape, and upon the same evidence of the debts, as the testator left them. The defendants show that the testator was an imbecile old man, and had been for years prior to his death incapable of taking proper care of his property.

But, besides this, the Coryells have done nothing to se-
cure the trust fund. They were authorized, by the will,
to invest the fund in a particular manner. Until they
could make such investment, it was clearly their duty
to see that the fund was secure. We have a note for
$11,522.08, dated May 1st, 1839, signed by the Coryells.
Not one dollar of interest has been paid on this note, and
it remains in the hands of the executors without any se-
curity. This is the history of ten other notes of John
and Alexander Coryell similarly situated. They say, in
their answer, that they have made no investment, as
directed by the will, because they have no money to invest.
Yet, upon the very face of his answer, Alexander Coryell
shows that he had in hand upwards of $3000, which he
ought to have invested in some way. He admits that he
owed the testator, at his death, $3645, and which he says
he is ready to pay whenever the executors shall require
the payment thereof. He admits that he has collected of
debts due the estate $4349.31. This, added to his own
indebtedness of $3645, would make $7994.31, besides
rents. From this sum deduct $4635, which he alleges
he has expended for the purposes of the estate, and there
remains in his hands upwards of $3000, notwithstanding
his denial of his having any money to invest.

The peculiar position which John Coryell occupies be-
fore the court is a reason for the court's interposition on
behalf of the infant. John Coryell admits that, at the
death of the testator, there were evidences of debt against
him amounting to the sum of $34,000 and upwards. As
a set-off, he brings in a bill for his services as the agent of
testator, and for attending him during his last illness, of
$11,800, and for purchase money for property of his own,
which he has conveyed to the executors since the testa-
tor's death, of some $21,500. After a full examination,
it has been determined that all the set-off John Coryell
was entitled to for services was $1200, and at the time of
the death of the testator, after allowing all just set-offs,

John Coryell owed the estate upwards of $31,000. It has been determined, after full investigation, that he had conveyed property to the estate for the purpose of exhausting the assets in hand, but not of liquidating his indebtedness, at exorbitant prices, and in a manner not authorized by law.

I might give other reasons which induce me to order security to be given. If the views heretofore expressed by the court upon the exceptions taken to the master's report are correct, and if any reliance is to be placed upon the report of the master, then most assuredly this security should be required, on the ground that it is necessary for the safety of the trust fund. If that fund is in danger this court is bound to protect it for the infant, when called upon to do so. Believing, as I do, that the fund is in danger, I am determined, if any of it should finally be lost, it shall not be on account of any fault of mine in refusing to the complainant all the protection of the law which is in my power to give.

As to Asher Reading, I should not order him to give security; but as he has expressed his willingness and desire to do so, I shall make the order general to all of the executors.

The appeal was argued by

*William Halsted,* for appellants.

*Joseph F. Randolph,* for respondent.

The opinion of the court was delivered by

GREEN, C. J. A bill was filed in the Court of Chancery, by the guardian of an infant legatee, under the will of John Holcomb, to have the rights of the legatee under the will declared and secured. The bill prays that a specific inventory and appraisement of the estate may be filed, that an account may be taken, and the amount due the complainant secured by the order of the court, and

that the defendants, the executors and trustees under the will, may be decreed to give security for the execution of the trusts, and for the safety of the funds in their hands. In the progress of the cause, an account has been taken ascertaining generally the amount and character of the trust fund, its present condition, the nature of the investments, and the manner in which the trustees have executed their trusts.

It appears, among other things, that the testator's personal estate amounted to $85,837; that $35,600 of that amount was due from two of the executors; that no specific inventory of the estate had been filed; that no account had been rendered; that no interest had been paid on the indebtedness of the executors; that no investment of the trust funds had been made, pursuant to the directions of the will, in productive real estate; that several parcels of real estate had been conveyed, by individual executors to the estate, at prices greatly beyond its real value, in violation of their duty as trustees, and that a claim for services against the estate, to an amount exceeding $10,000, was set up by one of the executors, which was pronounced by the court to be unfounded, and which was disallowed. These are some of the facts which are ascertained by the report of the master and by the evidence in the case, and which cannot, at this stage of the proceeding, be called in question.

It was thereupon ordered that the executors give security for the amount of the trust funds in their hands, the final decree in the cause not yet having been made, and the case standing on the equity reserved. From this interlocutory decree two of the executors have appealed. The power of the Chancellor to make the order, and the propriety of making it, under the facts and circumstances disclosed in this case, are both called in question.

The general principles which have been propounded and advocated by the appellants' counsel are—that neither

by the common law nor by the ecclesiastical law is an executor required to give security for the performance of his duty. That he is the creature and representative of the testator, and not, like an administrator, the creature of the law; that a testator has a right to repose confidence in whom he will, and that if he selects as his representative an irresponsible insolvent person, in the absence of fraud, or misconduct, or breach of trust, to require such executor to give security, and thereby to remove him from office, and defeat the will of the testator, is an exercise of power not vested in the court, and a violation of the rights of the executor. There must be, it is contended, some act or circumstance other than, and distinct from the condition and circumstances of the estate or of the executor, at the time of the appointment, which will warrant such interference by a court of equity. These positions are regarded as sound; and if the order appealed from cannot be sustained in consistency with these principles it ought to be reversed.

The grounds on which the Chancellor based the order for security is clearly stated in his opinion, as follows: "It appears to me that when a trustee has neglected to account in the proper court, as required by the statute, and when called on to account, refuses and avoids doing so, until by the authority of the court he is compelled, and that when the account is furnished, not voluntarily, but by force of law, it turns out that the trustee himself is the principal debtor of the estate, and for which indebtedness the estate has little or no security, the conduct of the trustee is sufficient, of itself, to justify the court in compelling the trustee to secure the trust fund." Having stated the large amount due from two of the executors to the estate, the failure of the executors to invest the trust funds, the untrue denial of there being funds in their hands for that purpose, the large and unfounded claim set up by one of the executors for personal services, and the conveyance of real estate by the executors to the

estate at exorbitant prices, and in a manner not authorized by law, the Chancellor adds—" if the views heretofore expressed by the court on the exceptions taken to the master's report are correct, and if any reliance is to be placed on the report of the master, then, most assuredly, this security should be required on the ground that it is necessary for the safety of the trust fund."

The material facts in the case, so far as they relate to the conduct of the executors and the management of the estate, had been fully ascertained in the progress of the cause. These facts were no longer matters of controversy. The only inquiry is, did they justify the court in ordering the executors to give security for the amount of the trust funds in their hands?

It is a well settled rule in equity, that if the acts or omissions of the trustee be such as to endanger the trust property, or to show a want of honesty or a want of a proper capacity to execute the duties, or a want of reasonable fidelity, equity will remove the trustee. 2 *Story's Eq.* § 128–9.

The power of removal necessarily involves the power and the right to require security for the trust funds. Conceding, then, to the counsel of the appellants all the legal principles for which they have so earnestly contended, and resting alone on this simple rule of equity, which is neither questioned nor denied, can it be affirmed that the order of the Chancellor is erroneous? Is it not perfectly safe to affirm, in view of the ascertained facts in the cause, that the conduct of the trustees has been such as to endanger the trust property, and to show a want of reasonable fidelity in the execution of the trust?

Upon this point the court entertain no doubt. And believing that the trust fund is in danger, we are bound to afford to the complainant all the protection which it is in the power of the court to give.

The order appealed from should be affirmed with costs, to be paid by the appellants, and not out of the estate.

Decision affirmed by the following vote:

*For affirmance*—CHIEF JUSTICE, Judges ARROWSMITH, HAINES, SWAIN, OGDEN, POTTS, RISLEY, RYERSON, VALENTINE, VREDENBURGH, WOOD.

*For reversal*—None.