**CARMAN et al. v. UNITED STATES.**

No. 46524.

Court of Claims.

Feb. 2, 1948.

MADDEN, J., dissenting.

720

H. C. Kilpatrick, of Washington, D. C. (Robert E. Coulson, James K. Polk, and Jesse Bay Robinson, all of New York City, Harold F. Noneman, of Washington, D. C., and Whitman, Ransom, Coulson & Goetz, of New York City, on the brief), for plaintiffs.

J. H. Sheppard, of Washington, D. C., and Theron L. Caudle, Asst. Atty. Gen. (Robert N. Anderson and Andrew D. Sharpe, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and WHITAKER, LITTLETON, MADDEN, and HOWELL, Judges.

**HOWELL, Judge.**

This suit involves the question as to whether income of a trust created by the decedent is properly included in his gross income for the year 1937 under section 22 (a) of the Revenue Act of 1936, 26 U. S.C.A. Int.Rev.Code, § 22(a).[1]

The facts are not in dispute and those facts which relate to the issue presented are substantially as follows:

Plaintiffs are the executors of the last will and testament of Arthur Curtiss James, deceased, who sue to recover additional Federal income tax assessed by the Commissioner of Internal Revenue for the calendar year 1937 paid in part by decedent and in part by plaintiffs. The amount claimed is $72,628.77, being the aggregate of two claims for refund filed on March 13, 1941, and June 28, 1944, respectively.

On or about December 24, 1930, decedent executed a trust indenture designating the United States Trust Company of New York as trustee. The corpus of the trust consisted of bonds of four corporations, stocks of seventeen corporations, and cash in the amount of $839.26, having an aggregate value as of January 2, 1931, of $2,667,162.76. Subsequent additions to the trust consisting of cash were received by the trustee and aggregated $11,209.79.

The trust was created for a term measured by the lives of the decedent and his wife Harriet P. James, the longest permissible period under the applicable New York law.

The decedent retained no power to control or direct the management of the trust corpus or the investment of the trust funds, no right to borrow from the trust, no right to vote any of the stock held in the trust and no other powers of management whatsoever. Purchases and sales for the trust were subject to the approval of an advisory committee consisting of William M. Kingsley, President and later Chairman of the Board of the United States Trust Company, William W. Carman, who had been associated with the decedent for many years as office manager and prior to that time had been employed by decedent's father since 1894, and Robert E. Coulson, the decedent's attorney. The advisory committee with the original membership named in the trust indenture served throughout the existence of the trust. The decedent did not at any time give directions or make suggestions as to sales or investments for the trust.

The indenture expressly provided that no part of the income or principal could ever be paid to the settlor or his wife in the following language: " * * * Neither the Settlor nor said Harriet P. James shall at any time he designated as beneficiaries of the trusts herein provided."

The trust was expressly made irrevocable in the following language: " * * * The trust herein created is irrevocable and the Settlor does not reserve any rights in relation to the property held by the Trustee hereunder except such as are expressly set out herein."

The names of the income beneficiaries were set out in Schedule A attached to the trust instrument and the indenture provided that any surplus income remaining at the end of any year should be paid to the First Presbyterian Church in the City of New York. The indenture further provided that upon the termination of the trust the principal should be distributed among eight designated charitable, religious and educational corporations.

The settlor reserved the right, either personally "and/or" through William W. Carman, as attorney in fact for the purpose, to strike out the names of the income or principal beneficiaries and to add other

---

[1] Sec. 22. Gross Income.

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * * "

beneficiaries, always subject to the proviso that neither the settlor nor his wife could at any time receive any part of the fund.

Decedent's parents died many years prior to the establishment of the trust here involved, and he had no children. The only members of his household consisted of decedent and his wife who died May 15, 1941, some three weeks prior to decedent.

The schedule of income beneficiaries was varied from time to time, occasionally by the decedent but usually by Mr. Carman acting as attorney in fact. The provisions of the indenture as to the distribution of principal were never modified.

The trust terminated with the death of the taxpayer on June 4, 1941. Following appropriate accounting proceedings in the Supreme Court of the State of New York, the principal of the·fund was distributed to the eight charitable, religious and educational institutions listed in the trust indenture and final judgment dated October 21, 1942, settling the account and discharging the trustee was entered. No part of the principal or income of the trust was ever paid to decedent or to his estate or to his wife or her estate.

The case of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, is relied upon by the government to justify the action of the Commissioner of Internal Revenue in taxing the income from the trust for the calendar year of 1937 to the decedent as his income.

The Clifford decision, supra, involved a trust established for a term of five years with income payable to the wife of the settlor and the principal to revert to the settlor upon the termination of the trust. The settlor was also the sole trustee and retained full control over the trust assets even to the point of speculation. The Supreme Court held that the settlor remained for practical purposes the owner of the trust property and that the trust income should be taxed to him.

In concluding as a matter of law that the settlor never ceased to be the owner of the corpus after the trust was created, the court considered three factors: the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus, by the settlor.

In the course of his opinion, however, Mr. Justice Douglas made the following significant observations (309 U.S. p. 336, 60 S.Ct. 557): " * * * Our point here is that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership and are appropriate foundations for findings on that issue."

The result reached in the Clifford case was entirely sound, as the trust there attempted was a transparent device to lessen the settlor's tax liability while reserving to him all of the substantial attributes of ownership.

It is well to note that in practically every case where the rule of the Clifford case has been applied, a family trust established by the father or mother or both for their children or adopted children or by a husband for his wife has been involved. These are the cases relied upon by the government to establish liability of the settlor in the instant case. Littel v. Commissioner, 2 Cir., 154 F.2d 922; Commissioner v. Buck, 2 Cir., 120 F.2d 775; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Hopkins v. Commissioner, 5 T.C. 803; Stockstrom v. Commissioner, 8 Cir., 148 F.2d 491; George v. Commissioner, 8 Cir., 143 F.2d 837; Steckel v. Commissioner, 6 Cir., 154 F.2d 4; Suhr v. Commissioner, 6 Cir., 126 F.2d 283; Price v. Commissioner, 6 Cir., 132 F.2d 95; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 521; Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; Du Pont v. Commissioner, 289 U.S. 685, 53 S.Ct. 766, 77 L.Ed. 1447; Backus v. Commissioner, 6 T.C. 1036; Reuter v. United States, 34 F.Supp. 1014, 92 Ct.Cl. 74.

In the instant case, none of the decisive facts about which Mr. Justice Douglas spoke in Helvering v. Clifford, supra, are present. This trust was for the longest possible duration, no wife or even relative was a beneficiary, no powers of manage-

ment were retained by the settlor and no part of the trust income might be used to discharge any legal obligation of support resting upon the settlor.

It is argued, however, that because the settlor reserved the right to change the beneficiaries that the exercise of such power to procure the payment of income to another is the enjoyment and hence the realization of the income—"nonmaterial satisfaction" which the settlor might derive from the fact that he had made gifts to charitable institutions and to private individuals in need of funds.

Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154, involved a series of trusts which two brothers established for their children, some of whom were minors during the tax years in question. The corpus of each trust consisted of stock of the Quaker Oats Company, of which the settlors were the chief officers. The trustees of each trust were the settlor, his brother and his wife, having full powers of management. Each settlor reserved the right to withdraw any part of the trust corpus in exchange for other property of equal value and each trust indenture provided that the brother and wife of the settlor should have full power to alter or amend the indenture by changing the beneficiaries or in any other respect.

The Supreme Court, relying upon Sec. 167, 26 U.S.C.A. Int.Rev.Code, § 167,[2] rather than Sec. 22(a), held that the income of the trusts established for minor children was taxable to the grantor because it was available to discharge his legal obligation to support his children. The court held, on the other hand, that the income of the trusts for adult children was not taxable to the settlor under the facts before it, and remanded the case for a further hearing as to the possible effect of Sec. 22(a). In the course of his opinion, Mr. Justice Reed emphasized that economic gain as distinct from the nonmaterial satisfaction of making a gift is essential to taxability. After stating in substance that the provisions of the trust would satisfy the normal desire of a parent to make gifts to his children, and posing the question whether this alone would be sufficient to make the trust income taxable to the settlor, he went on to say (317 U.S. p. 168, 63 S.Ct. 147): "Disregarding for the moment the minority of some of the beneficiaries, we think not. So broad a basis would tax to a father the income of a simple trust with a disinterested trustee for the benefit of his adult child. No Act of Congress manifests such an intention. Economic gain realized or realizable by the taxpayer is necessary to produce a taxable income under our statutory scheme. * * * The 'non-material satisfactions' (gifts—contributions) of a donor are not taxable as income."

Following the remand of the case for further proceedings, the Tax Court held (John Stuart, 2 T.C. 1103) that the trust income was not taxable to the settlor under Sec. 22(a) holding that the settlor retained no sufficient control and that the trusts were completed gifts to adult emancipated children designed to make them financially independent.

It is interesting to note at this point that since the Stuart case, supra, income available to discharge the legal obligation of support is taxable to the settlor has been limited by Congress by a subsequent amendment to Sec. 167 of the Code, so that now only such income as is actually used to discharge such obligation may be so taxed.

In Helvering v. Elias, 2 Cir., 122 F.2d 171, Mr. Justice Learned Hand discussed the situation as follows (pages 172, 173):

" * * * The case of Helvering v. Clifford * * * was a departure from the concept of property as it is generally used in the law, and involved in some

---

[2] Sec. 167. Income for benefit of grantor

"(a) Where any part of the income of a trust—

*     *     *     *     *

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor;

*     *     *     *     *

"then such part of the income of the trust shall be included in computing the net income of the grantor."

measure a reversion to earlier notions which treated the family as the jural unit. * * *

"Obviously, the consequences of an inflexible application of such a doctrine would be extremely drastic; for example, the income of an equitable life estate created by a father for his son would be taxed to the father so long as he lived. The court had no such revolutionary purpose and very carefully protected itself from such an interpretation of its decision. For, while it is true that the prime consideration is whether the income remains within the family, there are two other circumscribing factors: the length of the term and the powers of management reserved to the settlor. * * *"

As we have said, the only circumstance here present is the "nonmaterial satisfaction" which the settlor might derive from the fact that he had made gifts to charitable institutions and to private individuals in need of funds. This circumstance alone, as Helvering v. Stuart, supra, establishes, is not sufficient to render the trust income taxable to the settlor.

It has been noted by the Supreme Court that taxation is an "eminently practical" matter (Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L. R. 758 ⊦, United States v. Jacobs, 306 U.S. 363, 370, 59 S.Ct. 551, 83 L.Ed. 763), and in commenting upon Sec. 22(a) of the Revenue Act of 1936 the court said in the Clifford case, supra (page 334 of 309 U. S., page 556 of 60 S.Ct.): "The broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power within those definable categories. * * *"

It should also be noted that the power to tax is the power to destroy, and until Congress, by express terms places all trusts within the definable categories of Sec. 22 (a), supra, this court finds it impossible to hold that the settlor in the case before us should be held taxable with respect to the income of the trust.

Judgment will be entered for the plaintiffs in the aggregate amount of $72,628.77, with interest at the rate of six percent per annum on the two items involved, to be determined by the Commissioner of Internal Revenue under the law.

It is so ordered.

JONES, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

MADDEN, Judge (dissenting).

I am unable to agree with that part of the court's decision holding that the income of the trust was not taxable to the decedent, the creator of the trust. I think that he retained, after putting the property in trust, what was, in the circumstances, the most important attribute of ownership, that is, the power to dispose of it to anyone in the world except himself and his wife. He, of course, felt no need for retaining this property within his own power of use and enjoyment, or he would not have made the arrangement that he made. It being surplus to his personal needs, and he being of a generous nature, the question was, who should have the enjoyment of it. And his answer, in the trust instrument, was, such person or persons as I may, from time to time, select and designate, among all the persons in the world except two, myself and my wife. The trust instrument, then, created no beneficial right in any person other than the settlor, except the day-to-day enjoyment of the persons designated to get the income, and the expectancy of those named in the trust instrument to take the principal upon the death of the settlor and his wife, if someone else was not, in the meantime named in their stead. The arrangement left the disposition of both income and principal completely subject to the control of the settler, except that neither he nor his wife could personally acquire any of it. He could have given the property to a child, in the unlikely event that he had a natural child, or in the event, which might well have occurred, that he adopted a child. He could have given it to his wife, if his wife who was living at the time of the creation of the trust had predeceased him, as she

did in fact, and he had married again, which he did not.

The trust was, in effect, an arrangement for the settlor to acquire, tax-free, an income to be used *by him* for purposes of generosity, as those purposes appealed to him from time to time. It did not give him merely the satisfaction of *having made* a generous provision in the past, permanently or for a fixed time. It left with him the current satisfaction and the future satisfaction of making gifts when and as he chose and to such persons as he chose.

Many persons who pay income taxes use some part of their income in making gifts, contributing to the support of indigent persons, assisting young friends with the expenses of their education, or doing other acts of generosity. They do these things out of what is left after they have paid the taxes on their income. The decedent in this case, because he had accumulated enough assets to feel safe in segregating a part of them and devoting them to these purposes, was able to do exactly these same things from time to time as the spirit of generosity toward particular persons or institutions moved him, without first paying income taxes on the income later used for these purposes. I think he should have had to first pay his taxes, and then be generous or not with what he had left, as other people have to do.

This case is in its essentials like Brown v. Commissioner of Internal Revenue, 3 Cir., 131 F.2d 640, 641, certiorari denied 318 U.S. 767, 63 S.Ct. 760, 87 L.Ed. 1138. There the settlor originally named a servant and a friend as beneficiaries, but reserved the right to change the beneficiaries at will, both as to the income and corpus. She also reserved the right to substitute trustees. The court said: "We think that a settlor who is a person of means and who can control the spending of a fund, which she has set up, in every respect except spending it for herself is sufficiently the 'owner' of the fund to make its income taxable to her under § 22 (a)."

I think that the reserved power in the Brown case to name new trustees was not important enough to distinguish that case from ours. I agree with the language from that case which I have quoted, and think that the settlor, in the case before us, was properly taxed on the income of the trust.