286 N.J. Super. 42 (1995)
668 A.2d 76
JANET ANN COFFEY, PLAINTIFF-RESPONDENT, AND CATHLEEN COFFEY, JENNIFER COFFEY AND MARY COFFEY SOLOMON, INTERVENORS-RESPONDENTS,
v.
THOMAS P. COFFEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 29, 1995.
Decided December 12, 1995.
*46 Before Judges KESTIN and ARIEL A. RODRIGUEZ.
Farmer & Campen, attorneys for appellant (Gregory T. Farmer, on the brief).
Karin Duchin Haber, attorney for intervenors-respondents (Ms. Haber, on the brief).
KESTIN, J.A.D.
Defendant appeals from orders of the trial court affecting the disposition of bonds and other assets he holds for the benefit of his *47 daughters, Mary, Jennifer and Cathleen. The orders required defendant to turn over to a special receiver for distribution to the daughters all the contents of a safety deposit box (the assets) and to pay
[] the receiver's fees, with a retainer of $2500;
[] $115,597.65 in interest to his daughters, from July 29, 1988;
[] $28,000 to Cathleen as reimbursement for her college costs, for which defendant was personally responsible but which had been paid out of the assets held by defendant; and
[] $9,600 in counsel fees to the daughters, plus an additional $900 in counsel fees for an enforcement proceeding.
Defendant was also ordered to transfer immediate ownership and possession of all accounts held for the daughters, including a $50,000 certificate of deposit held for Cathleen (mistakenly designated as Jennifer in the order). The orders further required defendant to secure a $5,000 bond as a precondition of receiving case files from defendant's former attorney and denied defendant's requests for
[] counsel fees of $7,500 to be charged against the assets held by defendant; and
[] repayment of $87,000 in federal taxes defendant alleged he paid on account of the assets held for the benefit of his daughters.
The award to defendant of $11,000 as reimbursement for funds he advanced for the purchase of Cathleen's certificate of deposit is not a subject of his appeal.
The trial court denied defendant's application for a stay, pending appeal, of distribution of the assets; but did order a stay, conditioned upon the posting of a supersedeas bond, to secure other monies defendant had been ordered to pay to his daughters or on their behalf. Defendant posted a cash bond of $250,000.00. On defendant's motion, we stayed the distribution of the assets pending disposition of this appeal.
The history of this matter dates back to May 17, 1973, when defendant prepared a memorandum memorializing his thoughts after a conversation with his accountant. He wished to give money to his three daughters, then young children 10, 7 and 4 years of age, "without it becoming legally theirs when they are *48 21," and in a manner that would minimize or eliminate the tax impact from transfers to them. A portion of the memorandum notes defendant's adoption of a plan recommended by the accountant.
He also pointed out another way  the purchase of municipal bonds which I would retain in my name and on which I would pay all taxes, giving them in gifts or in trips the sums of interest, and giving to them each year the maximum amount that the government allows a married man to give to his children. The risk in this, if I understood him correctly, is that after the children are 21, if any of the bonds are called in prior to maturity dates, I would be legally obliged to distribute this sum to them equally or to deposit it to their accounts. This strikes me as sound advice and I have determined to follow it. I will purchase from time to time bonds that might come due in 15, 20, or 30 years and hold them in my account while distributing them to the children each year in the maximum amounts that the law allows. I hereby certify that this should become a part of my will so that on my death the bonds should be given to my children to be shared equally by them.
Although defendant manifested his intentions in the 1973 memorandum, he did not begin to purchase municipal bonds in accordance with the plan until 1978.
On July 28, 1988, defendant and his wife were divorced, after having been separated for about ten years. In their incorporated agreement, the parties provided that defendant would "be responsible for all of the future costs and expenses to be incurred" for Cathleen's further education. Cathleen, the youngest of the three children, was then nineteen. Her elder sisters, Jennifer and Mary were, respectively, twenty-three and twenty-five years of age.
The parties' agreement, as recited in the judgment of divorce, provided further:
The Defendant agrees to maintain in full force and effect a certain "trust" for the benefit of the three children of the marriage equally, as testified to in Court on June 29, 1988. All of the items set forth on [certain exhibits] shall be maintained exclusively for the benefit of the three children of the marriage equally and irrevocably. The Defendant has affirmed under oath in open Court that the items contained on [the exhibits] shall be irrevocably held in trust for the benefit of Mary, Jennifer, and Cathleen Coffey, equally. The Defendant further agrees to provide a copy of the trust document/agreement to the Plaintiff's attorney promptly.
In October 1991, plaintiff filed a motion to enforce the terms of the divorce judgment, returnable on November 22, 1991. The motion sought a determination that defendant was "in willful *49 violation of litigant's rights," the imposition of sanctions for violation of the judgment of divorce, and an order:
[] compelling defendant to pay Cathleen all the costs and expenses she had incurred for her college education;
[] requiring defendant "to account completely" for the exhibits referred to in the provision of the judgment of divorce relating to the trust funds;
[] appointing a receiver to administer the trust; and
[] compelling defendant to pay over to the children all assets of the trust; and
[] awarding counsel fees.
Shortly after the motion was filed, Cathleen, by then twenty-two years of age, moved for leave to intervene and for essentially the same relief sought by plaintiff, her mother. Cathleen further sought an accounting relating to the sale of Pennsylvania real estate which had been held by defendant as custodian for Cathleen, as well as payment of the proceeds of the sale.
In an order entered on April 10, 1992, the two elder daughters, Jennifer and Mary, were joined as intervenors; and a discovery period was provided preliminary to a plenary hearing. The plenary hearing concluded on August 4, 1993. The findings and conclusions of the trial judge were set out in a letter decision dated September 20, 1993. A further enforcement proceeding on January 28, 1994 resulted in the orders from which this appeal has been taken.
A fundamental issue in this case is whether a valid trust exists at all, or whether defendant held the assets in some capacity other than trustee that would require him to turn them over to the beneficiaries on demand. Defendant has taken the position throughout these proceedings that it was his intention to establish an irrevocable trust governed by the terms of the 1973 memorandum, for the benefit of his children, with himself as trustee. He asserts that as bonds were recalled or reached maturity, at least until 1988, he either distributed the proceeds to a particular child or purchased a certificate of deposit for the benefit of a particular child, in a consistent effort to achieve equality of distribution among his children.
*50 Every indicator points to the conclusion that an active trust existed, one in which defendant, as trustee, retained legal title to the assets and was required to manage them in substantial compliance with the terms of the trust instrument, with care and prudence, for the benefit of his children, the cestuis que trustent, until such time as, by the terms of the trust instrument, the proceeds were to be turned over to the beneficiaries. Commercial Trust Co. v. Barnard, 27 N.J. 332, 343, 142 A.2d 865 (1958); Milberg v. Seaboard Trust Co., 7 N.J. 236, 244, 81 A.2d 142 (1951) (citing Blauvelt v. Citizens Trust Co., 3 N.J. 545, 71 A.2d 184 (1950)); Branch v. White, 99 N.J. Super. 295, 306-07, 239 A.2d 665 (App.Div.), certif. denied, 51 N.J. 464, 242 A.2d 13 (1968); Tannenbaum v. Seacoast Trust Co., 16 N.J. Misc. 234, 254-55, 198 A. 855 (Ch. 1938), aff'd, 125 N.J. Eq. 360, 5 A.2d 778 (E. & A. 1939); Restatement (Second) of Trusts, §§ 2, 164, 169-183 (1959).
Although the principle that "[a] trust cannot be created unless there is trust property", Restatement (Second) of Trusts, § 74 (1959), precludes a finding that a trust existed at the time defendant prepared his memorandum in 1973, no rule exists that precludes a trust from coming into existence at the time the settlor manifests the requisite intention by the way in which he treats or deals with certain property.
The manifestation may be by conduct, or by words, and no particular form of words is necessary. Restatement  Trusts, § 23. The issue of trust or no trust turns almost invariably on proof of intention, since the trust arises upon mere expression of the requisite intention.
[Eagles Bldg. & Loan Ass'n v. Fiducia, 135 N.J. Eq. 7, 9, 37 A.2d 116 (Ch. 1944), aff'd, 136 N.J. Eq. 117, 40 A.2d 627 (E. & A. 1945).]
Accord State v. Atlantic City Elec. Co., 23 N.J. 259, 266, 128 A.2d 861 (1957); State v. United States Steel Co., 12 N.J. 51, 58, 95 A.2d 740 (1953). We are aware of no rule holding that a trust, the existence of which is determined by the manifested intention of the settlor, may not be governed by previously declared terms if those may fairly be seen to express the settlor's continuing design. Indeed, authority exists to the contrary. See Brainard v. Commissioner of Internal Revenue, 91 F.2d 880, 882 (7th Cir.1937), *51 cert. dismissed, 303 U.S. 665, 58 S.Ct. 748, 82 L.Ed. 1124 (1938); Restatement (Second) of Trusts, § 26 cmt. k; but see id., §§ 75 cmts. a and c, 85 cmt. c.
Defendant has insisted that, from the time in 1978 when bonds were first purchased by him in trust for one or more of his daughters, he acted in funding the trust fully in accordance with the governing terms previously expressed by him in the 1973 memorandum. In the absence of any proof to the contrary and with documentary evidence tending to support defendant's assertion, it must be taken as established. Nothing else of moment having intervened in the interim, it is clear that, at the time of divorce in 1988, the trust existed, with active management by defendant, governed by the terms articulated in 1973.
By the time of divorce, the two elder daughters had completed their college studies and were emancipated. The judgment of divorce was entered during the summer between Cathleen's freshman and sophomore years at Bates College. The trial court found, based upon adequate, substantial, and credible evidence, Pascale v. Pascale, 113 N.J. 20, 33, 549 A.2d 782 (1988), that defendant paid for Cathleen's college education, as he was required to do by the judgment of divorce, "until the spring semester of 1989 when ... he advanced money from the trust to her for the last three semesters...." The trial court also found that the amount advanced was $28,000, and that defendant had not repaid the trust. Defendant has contended that the money was paid from the trust because it had been his practice with his two elder daughters to pay the cost of college education from trust proceeds, that it had always been his intention to follow that practice with respect to all three of his children, and that it was necessary to do so in order to achieve equality of treatment between the beneficiaries.
The trust instrument does not express this intention, however; but, even if such a purpose could be construed, with the entry of the judgment of divorce incorporating the parties' agreement, payment "for all of the future costs and expenses to be incurred with reference to Cathleen's further education[]" became *52 defendant's personal responsibility and could not be paid from monies that did not belong to him, i.e., the trust, proceeds. Defendant's past practices have no bearing in this regard. We are not called upon to decide whether defendant acted properly in funding all or a portion of his elder daughters' college educations from the trust. Even if he did, the execution of the property settlement agreement clearly established that cost as part of defendant's personal responsibility from 1988 forward. Advancing money for this purpose from the trust violated the expressed terms of the judgment of divorce and the parties' agreement. Defendant's use of trust monies to defray this personal obligation also constituted a dereliction of fiduciary duty by defendant as trustee. Accordingly, the judgment of the trial court requiring defendant to pay $28,000 is affirmed, but modified to require that sum to be repaid to the trust rather than directly to Cathleen.
It is clear from the record that defendant has breached his fiduciary responsibilities as trustee in other ways as well. Most generally, defendant regarded the trust monies as his own and dealt with the property of the trust as if it belonged to him. His statement at the plenary hearing, "when I'm finished with my generosity, I'll turn it over to them", sums up defendant's attitudes about managing the trust proceeds.
In similar circumstances, a court would be justified in holding that no trust existed because the settlor did not adequately segregate the assets of the trust from his own property. Restatement (Second) of Trusts, § 179 (1959); 2 Scott on Trusts, § 179.1 at 1430 (3d ed. 1967); cf. State v. Western Union Telegraph Co., 17 N.J. 149, 152-53, 110 A.2d 115 (1954); State v. Atlantic City Electric Co., supra, 23 N.J. at 267, 128 A.2d 861. This is an understandable problem when a person attempts to create a trust without proper legal advice and instruction. Where the settlor appoints himself as trustee, problems will inevitably occur as the unadvised settlor/trustee fails to take proper measures to manage the trust as an entity entirely separate from his own property. On balance in this case, however, we discern that a *53 trust was created with an identified corpus, but that defendant as trustee has been derelict in his duties by confusing his own interests and desires with the best interests of the trust as established in the instrument of its creation. Ultimately, especially in an irrevocable trust, it is the best interests of the beneficiaries that control. Branch v. White, supra, 99 N.J. Super. at 306, 239 A.2d 665; Restatement (Second) of Trusts, § 170 (1959). In principle and in carefully guided practice, "[t]he settlor of a trust can be the trustee of the trust," Restatement (Second) of Trusts, § 100 (1959), without violating any rule of law, and may continue as trustee as long as he remains free of self-serving conduct or acts otherwise in derogation of the terms of the trust or contrary to the legitimate interests and expectations of the beneficiaries as established in the trust instrument. See In re Koretzky, 8 N.J. 506, 528, 86 A.2d 238 (1951); Holcomb v. Coryell, 12 N.J. Eq. 289, 297 (E. & A. 1857); Clark v. Judge, 84 N.J. Super. 35, 62, 200 A.2d 801 (Ch.Div. 1964), aff'd, 44 N.J. 550, 210 A.2d 415 (1965). The fiduciary duties of a trustee are the same whether the settlor serves as trustee or a third party does.
Where an irrevocable trust is created with the settlor as trustee, it is essential that all the terms of the trust instrument be scrupulously followed, lest the effort of creating the trust be deemed to have been futile because the settlor/trustee has operated with such flexibility as to defeat the idea that the property of the trust has been set aside for special, individualized management that serves the objectives of the trust as distinguished from previously unexpressed interests or objectives of the settlor. See 2 Scott on Trusts, supra, § 164.1, at 1260 ("The terms of the trust are determined by the intention of the settlor at the time of the creation of the trust, and not by his subsequent intention."). And see National Newark and Essex Banking Co. v. Osborne, 19 N.J. Super. 175, 183, 88 A.2d 229 (App.Div. 1952); In re Ebert, 136 N.J. Eq. 123, 127, 40 A.2d 805 (Prerog.Ct. 1945); Magoon v. Cleveland Trust Co., 101 Ohio App. 194, 197-201, 134 N.E.2d 879, 882-83 *54 (1956); Restatement (Second) of Trusts, §§ 4, 164 (1959); 2 Scott on Trusts, supra, § 164, at 1254 and § 164.1, at 1257.
The trust instrument in this case establishes clear parameters. As its very terms expressly provide, the trust was created with three related ultimate objectives: first, it was to be the vehicle whereby defendant could give his children, annually, as much money as possible with little or no tax impact to them; second, as bonds matured or were redeemed after the children reached twenty-one years of age, the proceeds were to be distributed equally among the children; and third, no additional distributions were to be made to the beneficiaries when each reached the age of twenty-one, but at defendant's death the trust was to be dissolved and such assets as remained were to be distributed to the children in equal shares.
Some specific functional mechanics were expressly established in the trust instrument to serve these ends:
[] The corpus of the trust would consist of municipal bonds that defendant would purchase from time to time, retaining legal ownership in his own name as trustee;
[] Defendant as settlor "would pay all taxes";
[] The children would receive the interest earned on the bonds "each year [in] the maximum amount that the government allows". This mechanism of annual distribution in "the maximum amounts that the law allows" was, apparently, of such importance to defendant as settlor as to warrant repetition in the trust instrument. The form of payment would be "in gifts or in trips"; and
[] "[A]fter the children are 21, if any of the bonds are called in prior to maturity dates" the money realized would be distributed "equally" among the children or "deposit[ed] to their accounts."
There are additional, particular ways, as well, in which defendant has acted contrary to the duties imposed by law on a trustee. His use of trust monies to pay a $7,500 retainer to a prior attorney representing defendant is an example of defendant's breach of a trustee's duty of loyalty to the beneficiaries. Restatement (Second) of Trusts, § 170 (1959). Defendant's practice of depositing interest or other proceeds from the bonds in general accounts rather than designated trust accounts betokens a commingling of his personal assets with those of the trust that suggests poor management of trust property, notwithstanding the successful *55 investments defendant made and the records he kept. Id. § 179 ("The trustee is under a duty to the beneficiary to keep the trust property separate from his individual property."). Defendant's failure to render accounts to the beneficiaries, at least since they attained majority, was another breach of his duty as trustee. Id. §§ 172, 173.
There are also ways in which defendant has failed to discharge specific responsibilities of the trustee as established in this trust instrument, as well as by general rule. It is clear that, at least since the entry of the judgment of divorce in 1988, defendant has not made regular annual distributions of trust income to the beneficiaries to the maximum amount allowed without tax impact to the recipients, as was twice stated in the trust instrument to have been his objective as settlor. Id. § 182 ("Where a trust is created to pay the income to a beneficiary for a designated period, the trustee is under a duty to the beneficiary to pay to [the beneficiary] at reasonable intervals the net income of the trust property."). It is well that defendant has used the income from the trust to purchase additional interest bearing investments for the beneficiaries, such as certificates of deposit. Defendant was not free to make these choices, however, except to the extent that proceeds remained after the required tax-free annual distributions had been made. As trustee, he is bound by the terms of the trust instrument to make annual distributions. He is without power, either as trustee or settlor to change the terms of the irrevocable[*] trust. Gulick v. Gulick, 39 N.J. Eq. 401, *56 407-08 (Ch. 1885); La Fortune v. Commissioner of Internal Revenue, 263 F.2d 186, 192 (10th Cir.1958) ("[T]he general rule [is] that the nature and extent of the duties and powers of the trustee are determined by the terms of the trust. Those powers are not enlarged by the fact that the trustee is also the parent and natural guardian of the minor beneficiary.... In his capacity as trustee [the parent-settlor] was bound by the trust provisions."); Restatement (Second) of Trusts § 331 (1959); 4 Scott on Trusts, supra, § 331, at 2618; cf. Howard Sav. Inst. v. Peep, 34 N.J. 494, 502, 170 A.2d 39 (1961); In re Crichfield Trust, 177 N.J. Super. 258, 263, 426 A.2d 88 (Ch.Div. 1980).
Furthermore, defendant has failed to comply with the provision of the trust instrument requiring him to distribute to the children or deposit in their accounts (not the trust's accounts) the proceeds of any bonds maturing or called in prior to maturity dates after the children attained twenty-one years of age. More basically and generally, although it may be that, while the children had not yet attained legal majority, defendant, as trustee, could turn over to himself, as parent and custodian of property, any proceeds coming to the minor children, he certainly could not do so after the children attained majority. Cf. Whiteley v. Commissioner of Internal Revenue, 120 F.2d 782, 784 (3d Cir.), cert. denied, 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 527 (1941); Morss v. United States, 64 F. Supp. 996, 1000, 1002 (D.Mass. 1946), aff'd, 159 F.2d 142 (1st Cir.1947).
The trial court found, also based upon more than ample evidence, that, at least since the divorce, defendant has functioned as trustee with as much a purpose of controlling his adult children as managing the assets of the trust with care, prudence and fidelity to the terms of the trust instrument. His goal of controlling or punishing his children for what he perceives *57 to be their derelictions in their relationships with him is, by dint of how the trust has been administered since the divorce, clearly and unavoidably in conflict with defendant's duties as trustee. Defendant has demonstrated by his conduct since the divorce and his testimony at the plenary hearing that he is not capable of discharging his responsibilities as trustee while he harbors the personal hurt he feels. Where a trustee's interests conflict with those of the beneficiaries, the trustee is obliged to resign; and where he has not done so, the conflict is grounds for removal. In re Koretzky, supra, 8 N.J. at 528, 86 A.2d 238.
Defendant's inability to function properly as trustee, however, has no bearing upon the validity of the trust itself. We have been shown no reason why the trust should not be maintained and administered according to its terms until the specified alternate dates of termination, either the time when all the bonds have matured and their proceeds have been exhausted by the process of distribution, or at defendant's death, whichever first occurs.
Accordingly, we affirm the trial court's appointment of a "receiver" who shall function as substitute trustee and shall administer the trust in accordance with its terms. To the extent practicable, after the bonds and certificates of deposit referred to by the trial court have been turned over, the assets of the trust shall be marshalled and realized so that the beneficiaries may receive immediately, or as bonds and certificates of deposit mature or can prudently be sold or redeemed, cash payments equalling, in total, what they have been entitled to receive from the trust on an annual basis, or otherwise as bonds have matured or been redeemed, but which they have not received. In this connection, we note that the intervenors have requested that the distribution be made on the basis of substantial overall equality, but with no need for the long term mathematical precision that defendant testified he was determined to achieve. The $115,597.65 in interest ordered by the trial court shall be paid by defendant directly to the intervenors as monies due them since 1988, along with such additional interest as the trial court may determine to be due since the calculation was made in 1993.
*58 The remaining provisions of the trial court's judgment and orders are affirmed as determinations following from findings of fact that are supported by substantial evidence, and substantially for the reasons expressed by Judge Collester in his letter decision of September 20, 1993, with one exception by way of modification: after the initial effort at marshalling and realizing the trust's assets in order to pay the beneficiaries what is due them for omitted distributions in the past, the receiver's fees shall be paid by the trust rather than by defendant. Until that point, however, defendant shall be responsible for payment of the receiver's fees as ordered by the trial court. We view the orders granting counsel fees to the intervenors and denying them to defendant to be well warranted. The order denying defendant reimbursement for $87,000 in federal taxes he paid was required by the provision of the trust instrument in which defendant as settlor declared "I would pay all taxes," as well as for the reasons expressed by Judge Collester in his letter decision.
Affirmed as modified. Remanded to the trial court for such further action, consistent with this opinion, as may be required.
NOTES
[*] The irrevocability of the trust is clearly established by defendant's expressed desire in the trust instrument to avoid taxation to the greatest extent possible, see 26 U.S.C.A. §§ 2036(a), 2038; Durst v. United States, 559 F.2d 910, 913 (3d Cir.1977); United States v. Powell, 307 F.2d 821, 825-26 (10th Cir.1962); Stockstrom v. Commissioner of Internal Revenue, 148 F.2d 491, 494-95 (8th Cir.), cert. denied, 326 U.S. 719, 66 S.Ct. 23, 90 L.Ed. 425 (1945); cf. United States v. Byrum, 408 U.S. 125, 144-45, 92 S.Ct. 2382, 2394-95, 33 L.Ed.2d 238, 251-52 (1972); Helvering v. Clifford, 309 U.S. 331, 334-38, 60 S.Ct. 554, 556-58, 84 L.Ed. 788, 791-93 (1940); Commissioner of Internal Revenue v. Goodan, 195 F.2d 498 (9th Cir.1952); Lincoln Elec. Co. Employees' Profit-Sharing Trust v. Commissioner of Internal Revenue, 190 F.2d 326 (6th Cir.1951); Carman v. United States, 75 F. Supp. 717 (Ct.Cl. 1948), as well as by the terms of the parties' incorporated agreement.