JUSTICE SOLOMON, dissenting.
I agree with the majority that a physician-patient relationship can be deeply personal and may be capable, under certain circumstances, of creating a disqualifying conflict of interest that imperils the public's confidence. Hence, I agree to a remand to permit further, but careful, examination of the nature and extent of the physician-patient relationships at issue here. However, because Dr. Kenneth's relationship to the DSJ Family Trust's application is too attenuated to qualify as a disqualifying conflict of interest, I do not agree with the majority that a remand is necessary to determine whether Dr. Kenneth might, in his capacity as president or member of the Board of Education, vote on significant matters relating to the employment of Zoning Board members or their immediate family. Therefore, a remand to determine Dr. Kenneth's authority by virtue of his position on the Board of Education is unnecessary. Accordingly, I must respectfully dissent because I believe the trial court judgment, affirmed by the Appellate Division, was correct in rejecting the alleged Board of Education conflicts in this matter and should be affirmed.
I.
In 1991, the Legislature recognized that "[t]he vitality and stability of representative democracy depend upon the public's confidence in the integrity of its elected and appointed representatives," N.J.S.A. 40A:9-22.2(b), and therefore established a statutory code of ethics for local government officers and employees. The Legislature acknowledged that public employees, particularly **364 those representing their local municipalities, "cannot and should not be expected to be without any personal interest in the decisions and policies of government." Id. § 22.4. Therefore, the Legislature sought to strike the appropriate balance "between those conflicts of interest which are legitimate and unavoidable in a free society and those conflicts of interest which are prejudicial and material and are, therefore, corruptive of a democracy and free society." Ibid.
Of particular relevance to this appeal is N.J.S.A. 40A:9-22.5(d), which provides that a local official may not "act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment."[1] The statute in no way implicates a local government official's participation in an unrelated municipal *202 board, absent a financial or personal interest in the application at issue.
Furthermore, when analyzing the existence of a disqualifying conflict, we are constrained to apply the ethics rules with caution. Grabowsky v. Township of Montclair, 221 N.J. 536, 554, 115 A.3d 815 (2015). In an effort to strike the appropriate balance envisioned by the Legislature in enacting the Local Government Ethics Law, we must be mindful that "[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official." Wyzykowski v. Rizas, 132 N.J. 509, 523, 626 A.2d 406 (1993) (quoting Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 269, 146 A.2d 111 (1958) ).
**365 II.
With those guidelines in mind, it is important to first note that an irrevocable trust bearing Dr. Kenneth's name -- and not Dr. Kenneth himself -- owned a fifty-percent interest in the relevant lots at the time of the DSJ Family Trust's application. It is well settled that an irrevocable trust "cannot be terminated by the settlor once it is created," Black's Law Dictionary 1651 (9th ed. 2009), and "[u]ltimately ... it is the best interests of the beneficiaries that control," Coffey v. Coffey, 286 N.J. Super. 42, 53, 668 A.2d 76 (App. Div. 1995) ; accord Restatement (Second) of Trusts § 170 (Am. Law Inst. 1959). Dr. Kenneth was not a trustee of the Dr. Kenneth Trust; his nephew and nieces served as the trust's sole trustees. Indeed, from the application's inception, an irrevocable trust bearing Dr. Kenneth's name was the only nexus between Dr. Kenneth and the relevant lots.
Additionally, nearly two months before the Zoning Board held its first public hearing on the application, Dr. Kenneth's nephew and nieces -- acting as trustees -- transferred the Dr. Kenneth Trust's undivided fifty-percent interest in the two lots to the DSJ Family Trust. Our colleagues acknowledge that finding Dr. Kenneth directed the trustees to initiate this transfer would be mere speculation, making even more remote Dr. Kenneth's feeble connection to the lots. Absent any meaningful link to the relevant parcels or their transfer, Dr. Kenneth's relationship to the application is far too attenuated to qualify as an "interest" under N.J.S.A. 40A:9-22.3(d).[2]
III.
The supposed connection between the Zoning Board, the Board of Education, and the DSJ Family Trust's application is Dr. Kenneth -- the then-president of the Board of Education who was **366 also the brother and uncle of the beneficiaries of the irrevocable trusts that owned the lots at the time of the hearing. As president of the Board of Education, Dr. Kenneth did not have the authority to act unilaterally on behalf of the Board of Education as to any matters regarding its employees.[3] Although five Zoning Board members had either a direct or familial employment relationship with the Board of Education at the time of the DSJ Family Trust's application *203 and hearing, the application was wholly unrelated to the Board of Education or its property. The Board of Education was neither the applicant nor an objector before the Zoning Board. Neither the Board of Education nor any Zoning Board member who had a direct or familial relationship with the Board of Education owned the subject property or any property affected by the DSJ Family Trust's application. Nor did Zoning Board members vote on a matter that affected the Board of Education's interests, its revenue stream, or its employees when they voted on the application at issue.
I agree with the trial court that absent a meaningful link between the Zoning Board, the Board of Education, and the DSJ Family Trust's application, which does not exist here, a Zoning Board member's direct or familial employment relationship to the Board of Education cannot constitute a disqualifying conflict of interest. I reach this conclusion because "to abrogate a municipal action at the suggestion that some remote and nebulous interest is present[ ] would be to unjustifiably deprive a municipality in many important instances of the services of its duly elected or appointed officials." Van Itallie, 28 N.J. at 269, 146 A.2d 111.
IV.
Nevertheless, the Piscitellis contend that the attenuated ties between the Zoning Board, the Board of Education, and the DSJ
**367 Family Trust's application created a disqualifying conflict by virtue of Dr. Kenneth's service on the Board of Education of the City of Garfield in several capacities for more than thirty years. A local official's decades-long dedication to public service on a municipal board unrelated to the Zoning Board considering the application does not, in and of itself, create a disqualifying conflict of interest. This conclusion is consistent with the balance struck by the Legislature in enacting the Local Government Ethics Law. "Local officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people[ ] are undoubtedly the best equipped" to serve their municipalities, "[a]nd their determinations should not be approached with a general feeling of suspicion." Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954). It bears repeating that "[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official." Wyzykowski, 132 N.J. at 523, 626 A.2d 406 (quoting Van Itallie, 28 N.J. at 269, 146 A.2d 111 ).
V.
The Local Government Ethics Law governs whether any Zoning Board member has a disqualifying conflict of interest with respect to an application. It was enacted to provide clearer guidance to local officials by shoring up the lines between what is, and is not, a disqualifying interest. Yet, the majority's conclusion renders murky those lines by impermissibly extending the Local Government Ethics Law's purview to reach the interests of Dr. Kenneth -- an individual who is not subject to the limitations set forth under N.J.S.A. 40A:9-22.5(d). The application before the Zoning Board in no way implicated any interest of Dr. Kenneth or the Board of Education. Id. § 22.3(d). Therefore, Dr. Kenneth's position on the Board of Education could not have, in and of itself, imbued the matter with a Board of Education interest. The majority's conclusion upsets the careful balance struck by the **368 Local Government Ethics Law. I therefore must respectfully dissent, in part.

The Local Government Ethics Law defines "interest" as "the ownership or control of more than 10% of the profits, assets or stock of a business organization," N.J.S.A. 40A:9-22.3(d), and "member of immediate family" as "the spouse or dependent child of a local government officer or employee residing in the same household," id. § 22.3(i).

Dr. Kenneth and his brother owned the medical building adjacent to the relevant lots. However, any purported conflict created by ownership of the adjacent medical building vanished upon transfer of the lots to the DSJ Family Trust.

See Matawan Reg'l Teachers Ass'n v. Matawan-Aberdeen Reg'l Sch. Dist. Bd. of Educ., 223 N.J. Super. 504, 507, 538 A.2d 1331 (App. Div. 1988) (explaining that "a majority vote of the members of the board constituting a quorum" is necessary under N.J.S.A. 18A:11-1 to take any action).